[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10061

_____

D. C. Docket No. 05-00156-CV-2

JOSHUA KRUPA,
CYNTHIA KRUPA,
JOEL E. PRICE,
individually and on behalf of all
similarly situated individuals,

Plaintiffs-Appellants,

versus

LANDSAFE, INC.,
COUNTRYWIDE HOME LOANS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 22, 2008)

Before EDMONDSON, Chief Judge, and CARNES and FAY, Circuit Judges.

CARNES, Circuit Judge:

Joel Price and Joshua and Cynthia Krupa, who sued on behalf of a class of borrowers, appeal the district court's grant of summary judgment on their Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., claims in favor of the defendants, Landsafe Credit, Inc. and Countrywide Home Loans, Inc.

**I.**

Countrywide is a residential mortgage loan broker, and Landsafe is a credit reporting agency. The two of them are subsidiaries of the same parent company, Countrywide Financial Corporation.

Countrywide obtains almost all of the credit reports it needs for customers from Landsafe. Countrywide orders a credit report from Landsafe for each of its customers in the pre-qualification or pre-application stage of the loan process. Before August 2002, Landsafe charged Countrywide a $25.00 fee for each credit report that Countrywide ordered. Countrywide passed that $25.00 cost on to each customer who "locked in" a loan with it—each customer who made it through the application process and actually ended up using Countrywide to obtain a loan. The cost of the credit report that Countrywide ordered for a customer who did not end up getting a loan through it could not be passed on but was instead absorbed by

2

Countrywide.

In order to avoid having to absorb that cost, Countrywide asked Landsafe to change its pricing policy to charge more for the cost of credit reports on applicants who locked in loans and nothing for the reports on applicants who did not. The change would enable Countrywide to pass on to those who locked in loans the entire cost of all the credit reports it received. Landsafe made the change in its pricing policy in August 2002.

Under the change, Landsafe charged Countrywide a $35.00 fee for each customer credit report it ordered that led to the locking in of a loan, and nothing for any report that did not. Countrywide, in turn, passed on the $35.00 credit report fee as part of the cost of the loan to each customer who received one through the company. The price point was set so that the new pricing policy would be "revenue-neutral," and it achieved that goal: Landsafe's revenues from the credit reports it sold to Countrywide were the same after the new policy was implemented as they had been before.

The plaintiffs, Price and the Krupas, obtained a home mortgage loan through Countrywide in 2003 and 2004, respectively. As part of the screening process for the loans, Countrywide ordered from Landsafe a credit report on each of the two plaintiffs. Landsafe charged Countrywide $35.00 for each report, and

3

Countrywide passed that cost on to each plaintiff as part of the closing costs. The plaintiffs, on behalf of a class of borrowers who had paid Countrywide's $35.00 credit report fee, sued Countrywide and Landsafe under RESPA's anti-kickback, 12 U.S.C. 2607(a), and anti-markup, 12 U.S.C § 2607(b), provisions. The district court granted summary judgment against the plaintiffs on both claims.

## II.

The theory of the plaintiffs' kickback claim is that through the new pricing policy Landsafe is providing Countrywide with free credit reports for customers who don't lock in loans, or at least it is providing Countrywide with a pricing structure that allows it to pass along all of its credit report costs to its customers, as a kickback in return for Countrywide referring its credit reporting business to Landsafe.

In granting summary judgment to Countrywide and Landsafe on this claim, the district court concluded that the revised pricing policy did not violate RESPA's anti-kickback provision because it is undisputed that: (1) Landsafe made no more or less money as a result; and (2) Countywide purchased the same percentage (virtually all) of the credit reports it needed from Landsafe as it had before the change. We agree.

RESPA's anti-kickback provision provides:

4

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). Interpreting this provision, the Department of Housing and Urban Development has said: "When a thing of value is received repeatedly and is connected in any way with the volume or value of the business referred, the receipt of the thing of value is evidence that it is made pursuant to an agreement or understanding for the referral of business." 24 C.F.R. § 3500.14(e).

RESPA's § 2607(a) is quite specific in describing the kickback that it prohibits. It prohibits a kickback for referral of business. In this case the one receiving business is Landsafe and the one giving it that business is Countrywide. In order for there to have been a forbidden kickback, there would have to have been an agreement between the two that Countrywide would give Landsafe more of its credit reporting business than it was giving Landsafe before the agreement, or at least an agreement that it would not give Landsafe any less of that business.

The agreement, as the plaintiffs have plotted it out, was that Landsafe would change its pricing policy so that Countrywide could pass along to its customers all of the costs of the credit reports it received, instead of just part of those costs. We may assume, as the plaintiffs urge us to find, that by agreeing to the change in

5

pricing Landsafe conveyed a thing of value to Countrywide—the thing of value Countrywide received being the ability to pass along to its customers the costs of all of the credit reports it orders instead of just part of them. Still, there is no violation of RESPA's anti-kick back provision unless the agreement also provided or promised Landsafe Countrywide's business in return. And it did not.

The undisputed evidence is that the volume and value of the credit reporting business Countrywide referred to Landsafe has not changed in any way since the modification in pricing. In their statement of undisputed facts, the plaintiffs conceded that before the change Countrywide sent virtually all of its credit reporting business to Landsafe. And the evidence is undisputed that it still does. That is hardly surprising since the two companies are subsidiaries of the same parent.

The plaintiffs also conceded in their statement of undisputed facts that:

> The change to the $35 flat fee billing agreement was meant to be 'net neutral' to LandSafe, meaning that, assuming the total number of credit reports produced by LandSafe remained the same, LandSafe would receive the same total revenue under the $35 flat fee billing agreement (pursuant to which LandSafe only billed Countrywide for credit reports associated with loans that become "locked") as under the prior $25 billing arrangement (pursuant to which LandSafe billed Countrywide for each credit report, including credit reports associated with loans that never become "locked.")

So, Landsafe was not referred any more business, and the total value of the

6

business it continued to receive did not increase, as a result of it agreeing to change the price structure for credit reports furnished to Countrywide. Nor is there a speck of evidence that the understanding was intended to increase the amount or value of Countrywide's business that Landsafe received. Absent such an effect, or at least absent some threat that the business being referred would be discontinued or diminished if the thing of value was not conveyed, there can be no violation of § 2607(a).

## III.

The theory of the plaintiffs' §2607(b) anti-markup claim is that some of the $35.00 fee they each paid to Countrywide for their credit reports was unrelated to the cost of those reports, and instead was meant to subsidize Countrywide for credit reports for customers who did not lock in loans. This cost-spreading, the plaintiffs argue, amounts to an illegal markup. In rejecting this claim, the district court pointed out that: (1) all of the money Countrywide charged from the credit reports was paid over to Landsafe; and (2) the increase in price was related to services actually performed for the locked in customers. We agree.

RESPA's anti-markup provision provides:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually

7

performed.

12 U.S.C. § 2607(b). We have said that this provision "attempts to close any loopholes" in the anti-kickback provision "by prohibiting any person from giving or accepting any part of a fee unless services were actually performed." Sosa v. Chase Manhattan Mortgage Corp., 348 F.3d 979, 981 (11th Cir. 2003). For there to be a violation of this anti-markup provision, we stated in Sosa, "the payment must be made for some reason other than in exchange for services actually rendered." Id. at 983. Where the fee is for services actually rendered, there is no § 2607(b) violation.

In Sosa the plaintiffs claimed that the mortgage company, Chase Manhattan, violated the anti-markup provision because "Chase charged borrowers $50 for courier or messenger fees," it "paid only a portion of that fee to third-party contractors," and "Chase 'created the misimpression' that the fees were entirely paid to the third parties." Id. We affirmed the dismissal of the plaintiffs' complaint because they did not allege that "the portion of the charge that Chase retained was accepted 'other than for services actually performed,' i.e., that Chase performed no services that would justify its retention of a portion of the fee." Id.

In this case, as in Sosa, it is undisputed that the plaintiffs were provided with services in exchange for the $35.00 fee they paid to Countrywide. As the district

8

court pointed out, the undisputed evidence is that: "Plaintiffs paid a $35 flat fee for credit report services to Countrywide. That sum was in turn paid by Countrywide to Landsafe for the provision of credit reports. No part of the sum was retained by Countrywide."

Because the $35.00 that each plaintiff paid Countrywide for the credit report was in turn paid over in full by Countrywide to Landsafe, there was no splitting of the fee nor did anyone end up with any part of the charge "other than for services actually performed." 12 U.S.C. § 2607(b). Landsafe provided the credit report, and it received the entire amount that the plaintiffs were charged for that report. There was no forbidden markup.

## IV.

The district court's grant of summary judgment to the defendants, Landsafe and Countrywide, is **AFFIRMED**.[1]

---

[1] Because we have affirmed on other grounds, we do not reach the defendants' alternative argument that the credit report fee falls within the scope of § 2607(c), which is RESPA's safe harbor provision. We do reject as utterly unpersuasive the defendants' argument that the plaintiffs lack standing to bring the claims they have asserted.