**Tyna L. BOULWARE, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

**v.**

**CROSSLAND MORTGAGE CORPORATION, Defendant–Appellee,**

---

**United States of America,
Amicus Curiae.**

No. 01–2318.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 2002.
Decided May 22, 2002.

**ARGUED:** James Evan Felman, Kynes, Markman & Felman, P.A., Tampa, Florida, for Appellant. Christine N. Kohl, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Amicus Curiae. Michael Schatzow, Venable, Baetjer & Howard, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Katherine Earle Yanes, Kynes, Markman & Felman, P.A., Tampa, Florida; Andrew N. Friedman, Gary E. Mason, Victoria S. Nugent, Cohen, Milstein, Hausfeld & Toll, Washington, D.C.; Lee S. Shalov, Shalov, Stone & Bonner, New York, New York; Peter D. Fastow, Steven B. Preller, Troese, Fastow & Preller, L.L.C., Annapolis, Maryland, for Appellant. Robert D. McCallum, Jr., Assistant Attorney General, Thomas M. DiBiagio, United States Attorney, Michel Jay Singer, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C.; Richard A. Hauser, General, Peter S. Race, Assistant General, Joan L. Kayagil, United States Department of Housing And Urban Development, Washington, D.C., for Amicus Curiae. Mark D. Maneche, Venable, Baetjer & Howard, L.L.P., Baltimore, Maryland, for Appellee.

Before WILKINSON, Chief Judge, and WILLIAMS and TRAXLER, Circuit Judges.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge WILLIAMS and Judge TRAXLER joined.

## OPINION

WILKINSON, Chief Judge.

Plaintiff Tyna Boulware claims that § 8(b) of the Real Estate Settlement Procedures Act ("RESPA") is a broad price control statute prohibiting any overcharge for real estate settlement services. Boulware seeks to certify a class to challenge

Crossland Mortgage Corporation's alleged overcharge for credit reports. The district court found that Boulware did not allege any split or kickback of the overcharge from Crossland to a third party. It thus dismissed Boulware's complaint and denied class certification. We agree with the Seventh Circuit that § 8(b) is a prohibition on kickbacks rather than a broad price control provision. *See Echevarria v. Chi. Title & Trust Co.*, 256 F.3d 623 (7th Cir. 2001); *Durr v. Intercounty Title Co.*, 14 F.3d 1183 (7th Cir.1994). We therefore affirm the judgment.

## I.

In November 2000, Tyna Boulware, a Maryland consumer, obtained a federally related home mortgage loan from Crossland Mortgage Corporation.[1] In connection with this loan, Crossland purchased Boulware's credit report from a third-party credit reporting agency. On July 18, 2001, Boulware initiated this action, alleging that Crossland violated RESPA § 8(b), 12 U.S.C. § 2607(b) (2000), by charging her $65 for the credit report when it cost Crossland $15 or less to obtain it. Boulware claimed that Crossland kept the $50 overcharge for itself without performing additional services. She did not allege that the credit reporting agency or any other third party received payment from Crossland beyond that owed to it for services actually performed.[2]

Boulware sought civil remedies under RESPA, including treble damages, attorneys' fees, and costs. *See* 12 U.S.C. § 2607(d). In addition, she sought to certify a class of all parties who had received

similar mortgages from Crossland in the past twelve months, and who had paid Crossland for a credit report in connection with their loans.

On October 2, 2001, the district court dismissed Boulware's complaint and denied class certification. Following two Seventh Circuit decisions, the district court held that the "plain words" of RESPA § 8(b) "support the proposition that the statute is only violated where there is a charge for a real estate settlement service that is split or kicked back, not simply where there has been an overcharge." *See Echevarria*, 256 F.3d 623; *Durr*, 14 F.3d 1183. The district court recognized that the Department of Housing and Urban Development was authorized to promulgate regulations and interpretations of RESPA, *see* 12 U.S.C. § 2617, and intimated that HUD's view of the statute was consistent with Boulware's. However, the court refused to adopt a construction of the statute that went beyond § 8(b)'s plain meaning, "whether condoned by administrative agency utterances or not." Boulware appeals.

## II.

### A.

RESPA § 8(b) provides:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

---

1. On January 2, 2001, Crossland merged into Wells Fargo Home Mortgage, Inc. However, we follow the practice of the district court and parties by referring to the defendant as Crossland.

2. Because the district court dismissed Boulware's complaint under Fed.R.Civ.P. 12(b)(6), we accept her allegations as true. *See, e.g., Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir.1999).

12 U.S.C. § 2607(b). The plain language of § 8(b) makes clear that it does not apply to every overcharge for a real estate settlement service and that § 8(b) is not a broad price-control provision. Therefore, § 8(b) only prohibits overcharges when a "portion" or "percentage" of the over-charge is kicked back to or "split" with a third party. Compensating a third party for services actually performed, without giving the third party a "portion, split, or percentage" of the overcharge, does not violate § 8(b). By using the language "portion, split, or percentage," Congress was clearly aiming at a sharing arrangement rather than a unilateral overcharge.[3]

Here, Crossland collected an overcharge and kept it as a "windfall" for itself. *See Durr*, 14 F.3d at 1187. We therefore reject Boulware's argument that § 8(b) applies, and conclude that the district court correctly dismissed her complaint under Rule 12(b)(6).

This very case demonstrates the problems with concluding otherwise. As previously noted, Boulware does not allege that Crossland's purported overcharge was kicked back to or split with the credit reporting agency or any other third party. Outside of a kickback or feesplitting situation, there is no way to make sense of the statutory directive that "[n]o person shall give and no person shall accept" any portion of an unearned fee. In fact, under Boulware's view, Boulware herself would have to be the giver contemplated by the statute in order for § 8(b) to apply.

█ It would be irrational to conclude that Congress intended consumers to be potentially liable under RESPA for paying unearned fees. In addition to civil penalties, RESPA § 8(d) establishes criminal sanctions for violations, including up to one year in prison. And it makes both the giver and the acceptor jointly and severally liable. *See* 12 U.S.C. § 2607(d)(1)-(2). It would be perverse to find that Congress intended to impose such liability on consumers—the very group· it was trying to protect in enacting RESPA. *See* 12 U.S.C. § 2601. Accordingly, the giver in § 8(b) must be some party in the settlement process besides the borrower herself.

Boulware, joined by HUD as amicus curiae, contended at oral argument that the government would not prosecute consumers. However, it is unclear whether the government would be bound by HUD's statement that it is "unlikely to direct any enforcement actions against consumers for the payment of unearned fees." RESPA Statement of Policy 2001–1, 66 Fed.Reg. 53,052, 53,059 n. 6 (October 18, 2001). Moreover, it is insufficient for HUD to proclaim that the statute will not be enforced against consumers. We cannot interpret § 8(b) so as to compel the absurd conclusion that Congress drafted it to apply to consumers in the first place. *See, e.g., United States v. Wilson*, 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) (citing *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

Boulware cannot give a satisfactory explanation of what the phrase "[n]o person shall give and no person shall accept" means under her interpretation of the statute. She attempts to avoid the problem posed by the prospect of applying § 8(b) to consumers by asserting that a giver and acceptor do not both have to be present for the statute to apply. Alternatively she claims that § 8(b) only applies if the giver

---

**3.** An overcharge or unearned fee must be present in order for § 8(b) to apply because the charge must be one "other than for services actually performed." However, the presence of an overcharge alone, without any portion of the overcharge being kicked back to or split with a third party, is not sufficient to fall within the purview of § 8(b).

knows that services were not rendered. But Boulware's arguments are unpersuasive because these qualifications find no expression in the plain language of the statute. The use of the conjunctive "and" indicates that Congress was clearly aiming at an exchange or transaction, not a unilateral act.

Our interpretation of § 8(b) makes sense of all of the statute's terms and leaves a wide variety of conduct prohibited. For example, the provision would clearly apply to situations where a mortgage lender overcharges a consumer and splits the overcharge with a mortgage service provider, such as a credit reporting agency. In such a case, both the lender/giver and the credit-reporting agency/acceptor would violate § 8(b). In addition, the statute would apply if a mortgage service provider overcharged for its services and gave a mortgage lender a portion of the unearned fee.

In holding that § 8(b) requires fee-splitting or a kickback, our result is consistent with the only other federal appellate court that has addressed the question of whether § 8(b) requires unearned fees to pass from one settlement service provider to another. *See Echevarria,* 256 F.3d 623; *Durr,* 14 F.3d 1183; *Mercado v. Calumet Fed. Sav. & Loan Ass'n,* 763 F.2d 269 (7th Cir.1985). The Seventh Circuit has held on three occasions that § 8(b) does not apply to all overcharges for real estate settlement services. Instead, the court explained that § 8(b) "is an anti-kickback statute" which "requires at least two parties to share fees." *Mercado,* 763 F.2d at 270. And the court stressed that "under RESPA's express terms," the broad protection of the statute "extends only over transactions where the defendant gave or received any portion, split, or percentage of any charge to a third party." *Durr,* 14 F.3d at 1187 (internal quotation omitted). Further-

more, in both *Echevarria* and *Durr,* the Seventh Circuit confronted facts almost identical to those in the case at bar and found no violation of § 8(b) in the absence of any allegation of a kickback to a third party. *Echevarria,* 256 F.3d at 626–27; *Durr,* 14 F.3d at 1186–87.

Boulware contends that our interpretation of § 8(b) is incorrect because it makes § 8(a) and § 8(b) both proscribe the same conduct. However, a comparison of these two subsections does not affect our conclusion. Section 8(a) states:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). It is apparent that § 8(a) is not rendered meaningless by our interpretation of § 8(b). The provisions both seek to eliminate kickbacks or referral fees paid to a third party, but they do so by prohibiting different actions. Section 8(a) prohibits the payment of formal kickbacks or fees for the referral of business and does not require an overcharge to a consumer. On the other hand, § 8(b) prohibits "splitting fees with anyone for anything other than services actually performed." *Willis v. Quality Mortgage USA, Inc.,* 5 F.Supp.2d 1306, 1308 (M.D.Ala.1998) (noting the differences between § 8(a) and (b)). Section 8(b) therefore requires an overcharge and prohibits conduct where money is moving in the same way as a kickback or referral fee even though there is no explicit referral agreement.

**B.**

 In a further attempt to salvage her claim, Boulware urges us to proceed

past the language of § 8(b) to HUD's broader interpretation of the provision. *See* 24 C.F.R. § 3500.14(c) (2001) ("Regulation X"); 66 Fed.Reg. at 53,057–59. Deference might well be due Regulation X or HUD's statement of policy if § 8(b) were ambiguous. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But the text of the statute controls in this case. *Id.; see also, e.g., Hillman v. IRS,* 263 F.3d 338, 342 (4th Cir.2001) (citing *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). Although it is true that "RESPA is a broad statute, directed against many things that increase the cost of real estate transactions," it is equally true that "the objective of a statute is not a warrant to disregard the terms of the statute." *Mercado,* 763 F.2d at 271.

### III.

Despite the textual directive of § 8(b), Boulware argues that Congress' intent in enacting § 8(b) was far broader than our reading of it, and that her claim should accordingly not be dismissed. She maintains that Congress intended to forbid all overcharges and markups by mortgage lenders for every real estate settlement service they might provide. Boulware is in effect asking us to subject all settlement services, including, *inter alia,* title searches, title examinations, title insurance, attorneys' services, property surveys, credit reports, pest inspections, real estate agents' and brokers' services, and loan processing, to broad price regulation. In fact, under her interpretation of the statute, HUD or the federal courts could determine what settlement service fees are reasonable in the first instance, without an allegation that the fees were even marked up. *See* 66 Fed.Reg. at 53,059 (stating that under HUD's interpretation of § 8(b), which mirrors Boulware's, "[a] single ser-

vice provider also may be liable under § 8(b) when it charges a fee that exceeds the reasonable value of goods, facilities, or services provided"). Further, Boulware would provide both a private right of action and potential criminal penalties to enforce the price controls she envisions § 8(b) creating. *See* 12 U.S.C. § 2607(d).

If Congress had intended § 8(b) to sweep as broadly as Boulware proposes, it could easily have written § 8(b) to state that "there shall be no markups or overcharges for real estate settlement services." Or Congress could have explained that "a mortgage lender shall only charge the consumer what is paid to a third party for a real estate settlement service." But Congress chose not to draft the statute that way. And we have no authority to recast it. If we were to read § 8(b) in the way Boulware suggests, every settlement fee would be the subject of potential litigation and discovery, leading perhaps to increased costs for real estate settlement services in the long run. Though the regulation of charging practices would not be beyond the purview of Congress, this was not Congress' intent in enacting RESPA.

Instead, the view that § 8(b) only applies when there is a kickback or split with a third party is actually the view that is consistent with RESPA's stated purposes. In enacting RESPA, Congress proclaimed that "significant reforms in the real estate settlement process" were needed to protect consumers "from unnecessarily high settlement charges caused by certain abusive practices that ha[d] developed in some areas of the country." 12 U.S.C. § 2601(a). Congress went on to explain that one of the purposes of RESPA was "to effect certain changes in the settlement process," which would result "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of

certain settlement services." 12 U.S.C. § 2601(b)(2).

▮ Nothing in § 2601 indicates that RESPA § 8 was intended to eliminate all settlement service overcharges. Instead, its purpose was "to prohibit all kickback and referral fee arrangements whereby any payment is made or thing of value furnished for the referral of real estate settlement business." *Mercado*, 763 F.2d at 270–71 (quoting Senate report). And the provision was designed to prohibit "a person that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed." *Id.* at 271 (quoting Senate report); *see also Echevarria*, 256 F.3d at 627; *Durr*, 14 F.3d at 1186; *Duggan v. Indep. Mortgage Corp.*, 670 F.Supp. 652, 654 (E.D.Va.1987). Therefore, if we subjected a settlement service provider to RESPA liability for keeping an overcharge without requiring an allegation that the unearned fee was shared with a third party, "we would radically, and wrongly, expand the class of cases to which RESPA § 8(b) applies." *Echevarria*, 256 F.3d at 627.[4]

### IV.

RESPA was meant to address certain practices, not enact broad price controls. Congress chose to leave markups and the price of real estate settlement services to the free market by "consider[ing] and explicitly reject[ing] a system of price control for fees." *Mercado*, 763 F.2d at 271 (citing Senate report). Instead, Congress "directed §·8 against a particular kind of abuse that it believed interfered with the operation of free markets—the splitting

---

**4.** In deciding whether to certify a class, a district court has "broad discretion" within the framework of Fed.R.Civ.P. 23. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir.2001). Because Boulware failed to state a

and kicking back of fees to parties who did nothing in return for the portions they received." *Id.* Accordingly, we decline to extend § 8(b) beyond its text, and we affirm the judgment.

*AFFIRMED.*

claim as the purported named plaintiff, and because all other similarly situated plaintiffs would likewise fail to state a claim, the district court necessarily acted within its discretion in denying class certification.