[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2008
THOMAS K. KAHN
CLERK

No. 08-11511
Non-Argument Calendar
_____

D. C. Docket No. 07-00171-CV-WS-B

LORI HAZEWOOD,
individually and on behalf of other similarly situated,

Plaintiff-Appellant,

versus

FOUNDATION FINANCIAL GROUP, LLC,
TICOR TITLE INSURANCE COMPANY, INC.,
MERIDIAN TITLE SERVICES, LLC,
NETWORK CLOSING SERVICES, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(October 20, 2008)

Before TJOFLAT, BLACK and KRAVITCH, Circuit Judges.

PER CURIAM:

This is a putative class action involving alleged overcharges by a title insurer and its agents, in violation of the Real Estate Settlement Procedures Act (RESPA) § 8(b), 12 U.S.C. § 2607(b). We affirm the district court's threshold dismissal of the case.

**I.**

On review of a Fed. R. Civ. P. 12(b)(6) dismissal, we, like the district court, assume the factual allegations in the complaint are true and give the plaintiff the benefit of reasonable factual inferences. Then we review de novo whether the complaint, so construed, alleges a basis for relief. See, e.g., Rivell v. Private Health Care Systems, 520 F.3d 1308, 1309 (11th Cir. 2008).

According to the complaint, Lori Hazewood obtained a federally related loan of $98,000 from defendant Foundation Financial Group LLC. The loan was secured by a mortgage in favor of Foundation Financial Group on Hazewood's residence. Meridian Title Serivces LLC and Network Closing Services Inc.[1] acted as settlement agents for Hazewood in closing on the loan. Network also sold title

---

[1] The relationship between Meridian and Network Closing is unclear from the complaint; the parties appear to treat the two companies as joint actors or as alter egos of one another. Their relationship is not material to the disposition of this appeal. Hereinafter, this opinion will refer to them jointly as "Network."

2

insurance as an agent for defendant Ticor Title Insurance Inc.

In connection with this loan, Ticor, through its agent Network, issued Hazewood a title insurance policy. The premium was paid to Network, not Ticor, but the complaint alleges that the premium was, or may have been, split between the two companies. It is this premium that allegedly violated RESPA.

Alabama law requires title insurers to submit their rates to the Insurance Commissioner, who must then approve the "fairness and justness" of this "filed rate." Ala. Code. § 27-25-6(c). Title insurers are prohibited from charging customers premiums in excess of the filed rate. Ala. Code § 27-25-6(a). In this case, Hazewood was charged a title insurance premium in excess of the filed rate, and thus, in excess of the maximum rate permitted by Alabama law. According to the complaint, this overcharge, along with the permissible portion of the insurance premium, may have been split between Network (the settlement agents) and Ticor (the title insurer).

Hazewood's theory of the case is that the overcharge – that is, the portion of the premium in excess of the filed rate – was a "portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed," and thus prohibited by RESPA. See 12 U.S.C. § 2607(b). Put differently, Hazewood contends that the overcharge was,

3

as a matter of law, "other than for services actually performed." The RESPA claims were raised against Ticor (the title insurer) and Network (the title insurance agents).

In addition to the RESPA claims, the complaint also raised various claims under state law, chiefly unjust enrichment, as well as a federal Truth in Lending Act claim against Foundation Financial (the lender). The alleged overcharges for title insurance were also the factual basis for the putative class's various claims under RESPA and Alabama law.

The district court dismissed all the claims at issue on appeal.[2] Construing our RESPA caselaw, the district court concluded that the statute provides a remedy only when fees are charged in exchange for no services at all, not for mere overcharges or excessive fees. Because Hazewood alleged she was charged an unlawfully high premium, but that premium was for title insurance rather than for nothing at all, the district court held she did not state a RESPA claim. The district court further concluded that the state law claims were barred by the Alabama statute prohibiting title insurance premiums in excess of the filed rate, as that

_____

[2] The district court did not dismiss the Truth in Lending Act claim against Foundation Financial; however, it appears from the record that this claim has settled. Our jurisdiction would have been unaffected in any event, as final judgment was separately entered as to the claims and parties on appeal.

4

statute explicitly provides that it does not create any privately enforceable rights.

This appeal followed.

## II.

Hazewood argues that dismissal of her RESPA claims[3] was erroneous because her complaint alleges that a portion of her title insurance premium was unearned. We disagree.

RESPA § 8(b) provides that

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). As we have previously held, RESPA § 8(b) does not provide a cause of action for excessive fees – that is, charges where a service was performed, but the plaintiff feels she was overcharged by the service provider. Friedman v. Market Street Mortg. Corp., 520 F.3d 1289, 1296 (11th Cir. 2008). Rather, a plaintiff must allege that "no services were rendered in exchange for a settlement fee." Id. at 1298. "Where the fee is for services actually rendered, there is no § 2607(b) violation." Krupa v. Landsafe, Inc., 514 F.3d 1153, 1157

---

[3] Hazewood has abandoned any argument concerning the dismissal of her state law claims.

(11th Cir. 2008). Moreover, a RESPA plaintiff may not avoid the prohibition on excessive fee claims by asking a court to divide a fee for services actually performed into "reasonable" and "unreasonable" (and hence, unearned) components. Friedman, 520 F.3d at 1297 (quoting Kruse v. Wells Fargo Home Mortg. Inc., 383 F.3d 49, 56 (2nd Cir. 2004)). It follows, therefore, that where a plaintiff concedes that a service is actually performed in exchange for a settlement fee, she may not avoid dismissal of her RESPA claim by arguing that the "excessive" portion of the fee was "unearned." And because Hazewood does not contend that Ticor and Network did not provide any services, her complaint was properly dismissed.

Hazewood argues that her complaint should survive dismissal because it contains factual allegations that a *portion* of the title insurance fee was unearned or not for services actually performed. See generally Sosa v. Chase Manhattan Mortg. Corp., 348 F.3d 979, 983-84 (11th Cir. 2003) (to survive dismissal, RESPA plaintiff must allege that no services were performed for a settlement fee). This argument is contrary to our precedent stating for a settlement fee to be actionable, *no* services must be rendered in exchange for it. Moreover, to whatever degree it is relevant, we need not accept as true Hazewood's contention that no services were performed for the title insurance fee, or a portion of it. In the

6

circumstances presented here, stating that the title insurance fee (or a portion of it) was "unearned" or not for services performed is a legal conclusion, which neither we nor the district court need accept as true. See, e.g., Oxford Asset Management Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("legal conclusions masquerading as facts will not prevent dismissal"). This conclusory characterization cannot cure deficient factual allegations in the complaint. The factual allegations of the complaint make clear that Hazewood received title insurance coverage and paid a premium for it; that premium was in excess of the filed rate. Even if the excess portion of the premium was arguably "unearned" as a matter of Alabama law, as a factual matter it was not in exchange for nothing. It is clear from the complaint that Ticor performed services for the fee, namely issuing a title insurance policy. That defeats any RESPA § 8(b) claim as to Ticor. It is equally clear that Network provided some services for whatever portion of the fee it received, namely acting as Ticor's agent in selling the policy to Hazewood. No § 8(b) claim will lie against Network either.

Hazewood also argues that our previous cases, such as Friedman, enunciating the prohibition on dividing settlement fees into reasonable and unreasonable components are inapposite. In those cases, she argues, the plaintiff was asking a court to make an arbitrary determination that some portion of a

putatively excessive fee was unearned. But in this case, Hazewood argues such line-drawing is not at all arbitrary: the filed rate provides a ready benchmark by which we may divide the title insurance premium into earned and unearned components. The distinction she seeks to draw is unpersuasive. The notion that Congress intended RESPA § 8(b) to implicitly create a federal remedy for overcharges under state insurance laws – in circumstances when the state itself does not recognize a private right of action, at that – is simply too much to swallow. As we have emphasized, § 8(b) "is not a price control provision." Friedman, 520 F.3d at 1296. Recognizing that RESPA does not impose federal price controls on title insurance or other settlement services, we doubt that Congress intended to create a federal remedy for violations of state price controls, either, on the theory that violations of price controls are not for services actually rendered. Hazewood's contrived reading of the statute would do just that.

Finally, Hazewood urges us to "overrule, modify, or distinguish Friedman" so that her claim may proceed on the authority of a HUD policy statement which would permit § 8(b) claims for "unreasonable" or excessive fees, and which we rejected in Friedman as contrary to § 8(b)'s plain meaning. Friedman, 520 F.3d at 1296-98. We lack authority to overrule or modify Friedman, as the holding of a three-judge panel is the law of the circuit unless it is overruled (or undermined to

8

the point of abrogation) by the en banc Eleventh Circuit, or by the Supreme Court of the United States. See, e.g, United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (citations omitted). And as explained above, Hazewood's attempts to distinguish Friedman fail.

In sum, Hazewood has alleged no § 8(b) claim, and the dismissal of her complaint is

**AFFIRMED.**