**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THOMAS A. ARTHUR, JR.; JENNIFER
WHITEHEAD, Individually and on
behalf of two classes of consumers
similarly situated,

          *Plaintiffs-Appellants,*

          v.

TICOR TITLE INSURANCE COMPANY
OF FLORIDA,

          *Defendant-Appellee.*

No. 08-1727

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:07-cv-01737-AMD)

Argued: May 12, 2009

Decided: June 18, 2009

Before WILKINSON and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge King and Senior Judge Hamilton
joined.

## COUNSEL

**ARGUED:** Philip Scott Friedman, FRIEDMAN LAW OFFICES, PLLC, Washington, D.C., for Appellants. Darryl J. May, BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Martin E. Wolf, Richard S. Gordon, Benjamin H. Carney, QUINN, GORDON & WOLF, CHTD., Baltimore, Maryland, for Appellants. Robert A. Scott, Lisa M. Welsh, BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP, Baltimore, Maryland, for Appellee.

## OPINION

WILKINSON, Circuit Judge:

Plaintiffs are homeowners in Maryland who purchased title insurance from Ticor Title Insurance Company of Florida when they refinanced their mortgages. They allege that Ticor charged them rates that were higher than the applicable rates Ticor had on file with the Maryland Insurance Commissioner. And plaintiffs claim that Ticor, by splitting these excessive charges with its local agents, violated Section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607.

Because Ticor and its agents performed services in return for the charges that they collected, we conclude that plaintiffs' theory of liability conflicts with RESPA's statutory text and with our previous recognition that RESPA is not a price-control statute, *see Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002). Thus, the district court properly dismissed plaintiffs' RESPA claims. We also conclude that plaintiffs' state-law claims warranted dismissal, primarily for want of exhaustion, and we therefore affirm the district court's judgment. While the law is not indifferent to

the abuses plaintiffs allege, plaintiffs have chosen the wrong statute and the wrong forum in which to press their case.

I.

Ticor is a Florida corporation that sells title insurance in Maryland. Pursuant to the Maryland Insurance Code, Ticor has filed the rates that Ticor charges for title insurance with the Maryland Insurance Commissioner, and the Commissioner has approved those rates. *See* Md. Code Ann., Ins. §§ 11-403, 11-404. In particular, Ticor has three filed, approved rates: (1) its "Original Issue Rate"; (2) its "Reissue Rate"; and (3) its "Extended Coverage Rate." Ticor's reissue rate is 40% less than its original issue rate, and its extended coverage rate is 20% more than its original issue rate—which means that the extended coverage rate is double the reissue rate. The Insurance Code requires Ticor to adhere to these rates when it sells title insurance in Maryland. *See id.* §§ 11-407, 27-216(b).

The plaintiffs in this case, Thomas Arthur and Jennifer Whitehead, claim that Ticor did not follow these filed rates when it sold title insurance policies to plaintiffs and others in Maryland. In particular, Arthur and Whitehead allege that Ticor charged the wrong rate when plaintiffs purchased title insurance policies in connection with refinancing the mortgages on their homes. Plaintiffs claim that when a title insurance policy already exists on a piece of property, as was the case when plaintiffs refinanced, Ticor must charge the reissue rate. But when plaintiffs refinanced their mortgages and purchased title insurance for the benefit of their lenders, Ticor charged plaintiffs the extended coverage rate. Plaintiffs therefore claim that Ticor charged them double the lawful rate.

Plaintiffs also claim that Ticor charged these excessive rates with the assistance of local title insurance companies that acted as Ticor's agents in Maryland and that received commissions from Ticor. Specifically, plaintiffs allege that

Ticor's agents performed "closing and settlement services" when plaintiffs refinanced their mortgages. Plaintiffs allege that the services performed by the agents included conducting title searches and issuing the title insurance policies on behalf of Ticor. And when Ticor allegedly charged plaintiffs an excessive rate for their title insurance policies, plaintiffs claim that Ticor split the excessive fees with its agents.

Based on these allegations, plaintiffs filed a class action complaint against Ticor in district court. Plaintiffs sought damages under four legal theories. First, plaintiffs stated a claim for money had and received under Maryland common law. Second, plaintiffs claimed that Ticor had violated Section 8 of the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Third, plaintiffs brought a claim for negligent misrepresentation under Maryland law. Finally, plaintiffs filed a count of civil conspiracy, also under Maryland law. Plaintiffs asserted that the district court had both federal question and diversity jurisdiction over this action.

Ticor moved to dismiss before any issues of class certification were reached, and the district court granted the motion for all four of plaintiffs' claims. Only the first three counts are at issue in this appeal. On plaintiffs' claim for money had and received, the district court dismissed because plaintiffs had failed to exhaust the administrative remedies that were available to them under the Maryland Insurance Code—which authorized the Insurance Commissioner to order, among other things, restitution for a violation of the Insurance Code. *See* Md. Code Ann., Ins. § 4-113(d)(2). With respect to RESPA, the district court held that plaintiffs had failed to state a valid claim because Ticor and its agents had performed services in connection with plaintiffs' purchase of title insurance, and because RESPA did not prohibit charging excessive fees for those services. Finally, the district court dismissed plaintiffs' negligent misrepresentation count because plaintiffs had not alleged a false statement by Ticor.

Plaintiffs now appeal the district court's dismissal of their claims under RESPA, for money had and received, and for negligent misrepresentation. Our review is *de novo*.

## II.

### A.

We begin with plaintiffs' claims under RESPA. Section 8(b) of RESPA provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). As an initial matter, plaintiffs concede that Ticor and its agents did perform services in connection with plaintiffs' purchases of title insurance. Indeed, plaintiffs' complaint specifically states that Ticor provided "settlement services" and issued plaintiffs' title insurance policies. The complaint also declares that Ticor's agents provided "closing and settlement services," including title searches and the issuance of the policies on Ticor's behalf. Despite the fact that Ticor and its agents performed services, plaintiffs claim that Ticor can still be liable under Section 8(b) because the company charged rates for title insurance that were too high under Maryland law and because it gave a portion of the excessive charges to its agents.

Plaintiffs' claim cannot be squared with the plain language of the statute. Section 8(b) prohibits giving and accepting a portion of a charge "other than for services actually performed." Thus, the text of the statute makes clear that it bars splitting a charge with a party that has not actually performed services. The statute does not prohibit, as plaintiffs would have it, charging what plaintiffs claim is too much for services that have been performed, or splitting a fee with a party that has performed services. Indeed, to accommodate plaintiffs' theory of liability, we would have to delete the words

"other than" from the statute and add a new provision that bars giving and accepting "excessive fees" for services actually performed.

In *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261 (4th Cir. 2002), we held that Section 8(b) did not prohibit a mortgage company from imposing a "unilateral overcharge" on a consumer for obtaining the consumer's credit report. *Id.* at 264-265. We based that holding in large part on our recognition that Section 8(b) of RESPA "is not a broad price-control provision." *Id.* at 265. Rather than prohibiting alleged overpricing, we held in *Boulware* that Section 8(b) prohibits certain classes of arrangements in which fees are split with or kicked back to a third party. *See id.* We noted that "Congress 'directed § 8 against a particular kind of abuse that it believed interfered with the operation of free markets—the splitting and kicking back of fees to parties who did nothing in return for the portions they received.'" *Id.* at 268 (quoting *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 271 (7th Cir. 1985)); *see also id.* at 266 ("[Section 8(b)] prohibits 'splitting fees with anyone for anything other than services actually performed.'" (quoting *Willis v. Quality Mortgage USA, Inc.*, 5 F. Supp. 2d 1306, 1308 (M.D. Ala. 1998))).[1]

It is difficult to reconcile this interpretation of Section 8(b) with the theory of liability proposed by plaintiffs. Plaintiffs argue that Ticor violated RESPA by charging too much for title insurance, even though both Ticor and its agents performed services. But holding Ticor liable because it charged rates that were in plaintiffs' view too high would require us

---

[1] Plaintiffs argue that *Boulware* actually supports their RESPA claim. But in rejecting liability for a unilateral overcharge in that case, *Boulware* never suggested that there might be liability where a party gives or accepts a fee in exchange for services actually performed. *See id.* at 265 n.3 (in order for liability to attach, any fee split "must be one 'other than for services actually performed.'"). Here, both Ticor and its agents performed services, so there is no liability for charging what plaintiffs allege is too much for those services under Section 8(b) or under *Boulware*.

to treat RESPA as a price-control statute—a result that we rejected in *Boulware*. In effect, plaintiffs would require federal courts to engage in problematic efforts to set the value of insurance services, but plaintiffs point to nothing in RESPA that would suitably aid us in such a task. In order to avoid just this sort of inquiry, Congress directed Section 8 at the particular situation in which fees are split with parties who perform no services in return. That is not the situation we have here.

Our understanding of Section 8(b), both here and in *Boulware*, is further buttressed by Section 8(c) of RESPA. In fact, Section 8(c) is explicit in providing that there is no liability in the specific circumstances of this case. Section 8(c) states that "[n]othing in this section [Section 8 of RESPA] shall be construed as prohibiting (1) the payment of a fee . . . (B) by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance." 12 U.S.C. § 2607(c). That is exactly the situation we have before us. Plaintiffs' own complaint alleges that Ticor paid a fee to its agents for services actually performed in issuing title insurance. In this circumstance, Section 8(c) makes clear that Ticor did not violate Section 8 of RESPA by paying its agents for their services. Thus, Section 8(c) underscores what is evident from *Boulware* and from the text of Section 8(b) itself: plaintiffs have not stated a valid Section 8(b) claim.

### B.

Plaintiffs respond with an ingenious argument. They say that we should divide the amount that Ticor charged plaintiffs for title insurance into two parts: the portion of the charge that plaintiffs say was valid under the Maryland Insurance Code, and the portion of the charge that plaintiffs say was invalid. Plaintiffs argue that the invalid part of the charge was not "for services actually performed" and that Ticor therefore violated Section 8(b) when it split this invalid charge with its agents. To support this argument, plaintiffs rely on a regulation promulgated under RESPA by the Department of Housing and

Urban Development. That regulation provides: "If the pay-ment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or pro-vided." 24 C.F.R. § 3500.14(g)(2).

Plaintiffs' argument is unpersuasive because it seeks to nul-lify the plain language of Sections 8(b) and 8(c). Section 8(b) prohibits giving and accepting a fee where the fee is not "for" services performed, and Section 8(c) provides that there is no liability when a title insurance company pays its agent "for" services performed. 12 U.S.C. § 2607(b), (c). Regardless of the size of the fee that Ticor charged plaintiffs and passed on to its agents, the fee was still "for" the services that Ticor and its agents performed. *See Hazewood v. Found. Fin. Group, LLC*, 551 F.3d 1223, 1226 (11th Cir. 2008); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 56 (2d Cir. 2004). The statutory language does not authorize a court to divide charges into valid and invalid parts and to decide that the invalid part is not for services performed. *See Kruse*, 383 F.3d at 56. Indeed, we rejected in *Boulware* a similar attempt, also relying on regulations and policy statements issued by HUD, to impose liability beyond the plain scope of Section 8(b). *See* 291 F.3d at 266-67 (citing 24 C.F.R. § 3500.14(c); Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,057-59 (Oct. 18, 2001)). Here, as in *Boulware*, "the text of the statute controls." *Id.* at 267.

Other circuits addressing the scope of Section 8(b) have rejected similar requests to break up charges into multiple pieces based on HUD's regulations and policy statements. These courts have held that it would vitiate the plain language of Section 8(b) to divide fees into valid and invalid—or, in the language of 24 C.F.R. § 3500.14(g)(2), "reasonable" and "unreasonable"—parts. *See Friedman v. Market St. Mortgage Corp.*, 520 F.3d 1289, 1297 (11th Cir. 2008); *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 386-87 (3d Cir. 2005); *Kruse*, 383 F.3d at 55-57 & n.4. These courts have also

held, as we have, that RESPA is not a price-control statute. *See Friedman*, 520 F.3d at 1296; *Santiago*, 417 F.3d at 387 n.3; *Kruse*, 383 F.3d at 56-57; *see also Haug v. Bank of Am., N.A.*, 317 F.3d 832, 837-38 (8th Cir. 2003); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 880 (7th Cir. 2002). And these circuits have held that Section 8(b) does not prohibit charging "too much" for services actually performed; instead, they have held that an allegation that services were not performed is necessary for liability to attach under Section 8(b). *See Friedman*, 520 F.3d at 1296-98; *Santiago*, 417 F.3d at 387-89; *Kruse*, 383 F.3d at 56, 62.

In fact, the Eleventh Circuit recently decided a case just like this one—and held that there was no liability. In *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223 (11th Cir. 2008), the plaintiff claimed, as here, that the defendant had violated Section 8(b) by charging rates for title insurance that exceeded the rates filed with the state insurance commissioner and by splitting the charges with the defendant's agents. *Id.* at 1224-25. And the plaintiff argued that, even though the defendant and its agents had performed services, the invalid part of each charge for title insurance had not been for services actually performed. *Id.* at 1226. The Eleventh Circuit rejected the plaintiff's claim, holding that "for a settlement fee to be actionable, *no* services must be rendered in exchange for it." *Id.* The court reiterated that Section 8(b) is not a price-control provision and "does not provide a cause of action for excessive fees," and it held that the plaintiff could not divide up a fee into earned and unearned portions under the statute. *Id.* at 1225-27. The Eleventh Circuit concluded: "The notion that Congress intended RESPA § 8(b) to implicitly create a federal remedy for overcharges under state insurance laws . . . is simply too much to swallow." *Id.* at 1226.

We agree with the Eleventh Circuit—this sort of claim goes too far. Indeed, in arguing that we should divide Ticor's fees into valid and invalid parts based on state law, plaintiffs are

merely seeking to circumvent the recognition of this court and many others that RESPA is not a price-control provision. Applying plaintiffs' view, any charge that is too high would violate Section 8(b) because part of that charge would not be for services performed. It makes no difference to our analysis that plaintiffs claim that Ticor's charges are excessive as a matter of state insurance law. Regardless of the reason a charge may be too high, if we interpreted RESPA to prohibit charging too much for services actually performed, then the statute would be nothing more than a prohibition on inflated prices.

We therefore say again what we have said before: Section 8(b) of RESPA is "not a broad price-control provision." *Boulware*, 291 F.3d at 265. RESPA carries significant liability in the form of criminal penalties and treble damages. *See* 12 U.S.C. § 2607(d). Congress chose not to impose these weighty penalties on parties that split a fee for services performed based on the allegation that the amount charged to the consumer was too high. We will not extend RESPA's penalties beyond the scope of the statutory language to create liability for improper pricing. We therefore conclude that the district court properly dismissed plaintiffs' RESPA claims.[2]

## III.

We turn next to plaintiffs' claim for money had and received. In Maryland, a cause of action for money had and received "lies whenever the defendant has obtained posses-

---

[2] Plaintiffs state in conclusory fashion that Ticor also violated Section 8(a) of RESPA, which prohibits kickbacks in exchange for business referrals. *See* 12 U.S.C. § 2607(a). At no point have plaintiffs explained why Ticor's commissions to its agents should be regarded as referral fees in the circumstance in which the agents have indisputably performed settlement services. Because Section 8(c) makes clear that Ticor has not violated any of the provisions of Section 8 in this circumstance, *see id.* § 2607(c) ("Nothing in this section shall be construed as prohibiting . . . ."), plaintiffs' Section 8(a) claim fails as well.

sion of money which, in equity and good conscience, he ought not to be allowed to retain." *Benson v. State*, 887 A.2d 525, 547 (Md. 2005) (quoting *State ex rel. Employment Sec. Bd. v. Rucker*, 126 A.2d 846, 849 (Md. 1956)). The district court did not reach the merits of plaintiffs' claim for money had and received. Instead, the court dismissed the claim because plaintiffs had failed to exhaust the administrative remedies that were available under the Maryland Insurance Code.

We agree with the district court that exhaustion was required. Under Maryland law, when the statutory text creating an administrative remedy is not dispositive, there is "a presumption that the administrative remedy is intended to be primary, and that a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy." *Zappone v. Liberty Life Ins. Co.*, 706 A.2d 1060, 1069 (Md. 1998) (citing additional cases). Moreover, where a judicial remedy is "wholly or partially dependent upon the statutory scheme which also contains the administrative remedy, or upon the expertise of the administrative agency," Maryland courts have "usually held" that exhaustion is required. *Zappone*, 706 A.2d at 1070 (citing cases); *see Muhl v. Magan*, 545 A.2d 1321, 1322, 1330-31 (Md. 1988); *see also Fosler v. Panoramic Design, Ltd.*, 829 A.2d 271, 280-82 (Md. 2003); *Bell Atl. of Md., Inc. v. Intercom Sys. Corp.*, 782 A.2d 791, 806-807 (Md. 2001).

Plaintiffs' claim in this case is dependent on the Insurance Code because that claim will succeed only if plaintiffs show that Ticor violated the Code. If the Insurance Code did not require Ticor to adhere to its filed rates, plaintiffs would have no right to recover from Ticor for charging an excessive fee. Indeed, plaintiffs have suggested no reason other than a violation of the Insurance Code that Ticor would be liable to them under a claim for money had and received. *Zappone*, on which plaintiffs rely to argue that exhaustion was not required, did not address a claim for exceeding filed insurance rates, but instead claims for fraud and negligence that were

"wholly independent" of the Insurance Code. 706 A.2d at 1071. Plaintiffs' claim, by contrast, explicitly depends on the statute that also makes administrative remedies available to plaintiffs.

Moreover, plaintiffs' claim for money had and received implicates the expertise of the Maryland Insurance Commissioner in multiple ways. First, the Commissioner's expertise may be important in deciding whether Ticor actually violated the Insurance Code—which Ticor does not concede. The Commissioner would be in a better position than a federal court to determine, for example, whether plaintiffs are correctly interpreting the rate structure that Ticor filed with the Commissioner. *See* Md. Code Ann., Ins. § 11-403. In addition, plaintiffs argue that Ticor violated the Insurance Code's prohibition on "willfully" charging excessive rates, *id.* § 27-216(b)(1)(i), so the Insurance Commissioner's experience in this area likely will be useful in determining whether Ticor had the necessary intent to violate the Code.

Second, the Commissioner's expertise also will be important in determining the proper remedy for any violation by Ticor. Plaintiffs' claim for money had and received is equivalent to an action for restitution, so plaintiffs' claim implicates the authority of the Commissioner to require restitution for a violation of the Insurance Code. *See* Md. Code Ann., Ins. § 4-113(d)(2). It therefore makes sense for the Insurance Commissioner to exercise his expertise in the first instance in determining whether full restitution to plaintiffs is warranted. Furthermore, the Insurance Code grants the Commissioner the authority to impose a wide variety of other remedial measures, such as cease and desist orders, revocation of certificates of authority to sell insurance, and monetary penalties. *See id.* §§ 4-113, 4-114, 27-103. The Maryland legislature surely intended for the Commissioner to exercise his expertise in choosing among these remedies for a violation of the Code.

In sum, plaintiffs' claim for money had and received is not only dependent on the Insurance Code, but plaintiffs will be able to seek the same remedy before the Commissioner that they seek here. And requiring administrative exhaustion will protect the Commissioner's role under the Insurance Code in exercising his expertise and carrying out his remedial powers. Because plaintiffs have not yet exhausted or even pursued their available administrative remedies, their claim for money had and received was properly dismissed.[3]

The judgment of the district court is therefore

*AFFIRMED.*

---

[3] We also affirm the district court's dismissal of plaintiffs' claim for negligent misrepresentation. A necessary element of that claim is the allegation of a false statement. *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007). Plaintiffs' complaint alleged only that each HUD-1 form that Ticor gave to plaintiffs contained a false statement because the charge listed on each form for title insurance was unlawfully high. But as the district court correctly held, plaintiffs "admit that the dollar amount listed on the HUD-1 statement under title insurance was the amount charged and collected by Ticor," so plaintiffs "do not [validly] assert that Ticor made any false statements."