**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-2387**
_____

PATRICIA MITCHELL-TRACEY; MILTON D. BROWN; FRANCINE C. BYRD-BROWN; HELEN KLATSKY,

                Plaintiffs - Appellants,

       v.

UNITED GENERAL TITLE INSURANCE COMPANY; FIRST AMERICAN TITLE INSURANCE COMPANY,

                Defendants - Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:05-cv-01428-WDQ)

_____

Submitted: June 12, 2011          Decided: August 2, 2011

_____

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Philip S. Friedman, FRIEDMAN LAW OFFICES, PLLC, Washington, D.C.; Martin E. Wolf, Richard S. Gordon, Benjamin H. Carney, QUINN, GORDON & WOLF, CHTD., Towson, Maryland, for Appellants. Charles A. Newman, Jason E. Maschmann, Michael J. Duvall, SNR DENTON US LLP, Saint Louis, Missouri; Ira L. Oring, FEDDER & GARTEN, P.A., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff-Appellants are Maryland homeowners who purchased title insurance from Defendant-Appellees First American Title Insurance Company and United General Title Insurance Company (collectively, "defendants") when they refinanced their mortgages. In April 2005, plaintiffs filed a class-action lawsuit, alleging, inter alia, that defendants illegally charged higher rates than those they had filed with the Maryland Insurance Commissioner ("MIC"). After plaintiffs' class was certified, we decided Arthur v. Ticor Title Insurance Co., 569 F.3d 154 (4th Cir. 2009), which dismissed similar claims on account of plaintiffs' failure to exhaust administrative remedies under Maryland's Insurance Code (the "Code") before proceeding with litigation. In light of our decision, and plaintiffs' own failure to exhaust administrative remedies before filing suit, the district court decertified plaintiffs' class and dismissed their claims. For the reasons discussed below, we affirm.[1]

---

[1] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

I.

We briefly review the relevant facts and procedural history. Defendants are both title insurance companies who do business in Maryland.[2] Pursuant to Maryland law, each company has filed its insurance rates with the MIC. See Md. Code Ann., Ins. §§ 11-403, 11-404. Both companies have also filed discounted "reissue" rates with the MIC. Although the language of their respective policies differs slightly, each company's reissue rate purports to offer a forty percent discount to consumers who apply for mortgage title insurance for property that the consumer has had insured within the preceding ten years. Maryland law mandates that both companies adhere to their rates as published. Id. § 11-407(b).

Plaintiffs purchased title insurance from defendants while refinancing their homes. Plaintiffs claim to have qualified for defendants' discounted reissue rates, but contend that defendants nevertheless charged them higher premiums. In April 2005, plaintiff Patricia Mitchell-Tracey filed a class-

---

[2] Title insurance plays a key role in most real estate transactions, as it "insures the buyer of real property, or a lender secured by real property, against defects in the legal title . . . and guarantees that, in the event a defect in title surfaces, the insurer will reimburse the insured for losses associated with the defect, or will take steps necessary to correct it." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 66 (2d Cir. 1999).

3

action complaint in Maryland circuit court, alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607,[3] money had and received, negligent misrepresentation, and civil conspiracy. The following month, defendants removed the case to the federal district court of Maryland. Later that year, Mitchell-Tracey filed an amended complaint, which included the other named plaintiffs.

In September 2006, the district court granted class certification for

> [a]ll persons or entities in Maryland who within 10 years of having previously purchased title insurance in connection with their mortgage or fee interest, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by [either of the defendants] that exceeded the applicable premium discount or "reissue rate" for title insurance on file with the Maryland Insurance Administration that such persons or entities should have been charged.

Mitchell-Tracey v. United General Title Ins. Co., 237 F.R.D. 551, 554–55 (D. Md. 2006). The court referred the matter to a magistrate for mediation and the parties engaged in settlement efforts over the ensuing two-and-half years.

In June 2009, we decided Arthur, 569 F.3d at 154, in which we held, on facts similar to those presented here, that Maryland law required prospective litigants to exhaust

---

[3] The district court granted summary judgment for defendants on plaintiffs' RESPA claim in September 2006. We do not discuss it further.

administrative remedies made available by the Code before proceeding with judicial action.[4] See id. at 161-62. Following Arthur, the parties concluded that further mediation would not be productive and sought to resume litigation. In October 2009, Plaintiffs moved to amend their complaint to abandon their claims for negligent misrepresentation and civil conspiracy and to add claims for negligence, breach of contract, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). The following month, plaintiffs also initiated MIC administrative proceedings against defendants. That administrative action is currently pending.

In February 2010, the district court denied plaintiffs' motion to amend their complaint, holding that plaintiffs' proposed amendments were futile. The court explained that, as in Arthur, each of plaintiffs' claims relied on a threshold determination by the MIC that plaintiffs were correctly interpreting the rate structure that defendants had filed with the state. As plaintiffs had not exhausted Maryland's mandatory administrative process, the court reasoned, their arguments could not survive a motion to dismiss. On that basis, the court denied plaintiffs' subsequent motion for

---

[4] We discuss Arthur in greater detail below, as part of our evaluation of plaintiffs' claims on appeal.

reconsideration and granted defendants' motions for judgment on the pleadings and to decertify plaintiffs' class. It later denied plaintiffs' motion to reconsider those determinations. This appeal followed.

II.

We review de novo the district court's grant of judgment on the pleadings, "applying the same standard for Federal Rule of Civil Procedure 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). We review the district court's denial of plaintiffs' motions for reconsideration of (1) plaintiffs' motion to amend and (2) its dismissal of their claims for abuse of discretion. Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 407 (4th Cir. 2010); Laber v. Harvey, 438 F.3d 404, 428 (4th Cir. 2006).

A discussion of Arthur, and its applicability here, sets the stage for plaintiffs' arguments on appeal. In Arthur, we upheld the dismissal of a similar Maryland suit against title insurers. See 569 F.3d at 156. Plaintiffs in that case were also Maryland homeowners who alleged that their title insurer charged them higher rates than the insurer had filed with the MIC. Id. We affirmed the dismissal of plaintiffs' claims,

6

relying primarily on their failure to exhaust available administrative remedies under the Code. See id. at 161.

Our decision cited, inter alia, Maryland courts' presumption that "when the statutory text creating an administrative remedy is not dispositive" as to whether exhaustion is mandatory, "the administrative remedy is intended to be primary, and that a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy." Id. at 161 (quoting Zappone v. Liberty Life Ins. Co., 706 A.2d 1060, 1069 (Md. 1998)). We explained that plaintiffs' claim was "dependent on the Insurance Code because that claim will succeed only if plaintiffs show that [the insurer] violated the Code." Id. We further observed that assessment of plaintiffs' claim would benefit from the MIC's expertise, as the MIC "would be in a better position than a federal court to determine, for example, whether plaintiffs are correctly interpreting the rate structure that [the defendant insurer] filed with the [MIC]." Id.

Here, too, plaintiffs' claims for money had and received, negligent misrepresentation, and civil conspiracy turn on the threshold question of whether defendants failed to comply with their published insurance rates. Plaintiffs can only succeed on a showing that defendants violated the very insurance code at issue in Arthur. That comprehensive state statutory

7

scheme plainly gives the MIC authority to grant administrative remedies, including restitution for any overcharge.[5]  See Md. Code Ann., Ins. § 4-113(b), (d)(1)-(2); see also Arthur, 569 F.3d at 162.  As the district court concluded, on these facts, Arthur mandates dismissal to allow the MIC to assess, in the first instance, "whether the Insurance Code has been violated and the remedy, if any, to which the Plaintiffs are entitled." J.A. 2458.


III.

Plaintiffs nevertheless make three distinct arguments as to why Arthur should not compel dismissal here.  First, they urge that the Supreme Court's decision in Shady Grove Orthopedic Associates v. Allstate Insurance Co., 130 S. Ct. 1431 (2010), superseded Arthur.  Second, they assert that even if Arthur remains good law, the district court erred by dismissing their case rather than staying it pending exhaustion of administrative proceedings.  Finally, plaintiffs argue that the district court erroneously denied their motion to amend, which, they allege, would have insulated their complaint from dismissal under Arthur.  We consider each contention in turn.

---

[5]  Indeed, the MIC accepted jurisdiction over plaintiffs' case when they belatedly filed their November 2009 administrative complaint.

8

A.

Plaintiffs' argument that Shady Grove superseded Arthur is unpersuasive. In Shady Grove, the Supreme Court considered whether a New York plaintiff could file a federal class action lawsuit for statutory penalties despite a state statute that prohibited "class actions in suits seeking penalties or statutory minimum damages." 130 S. Ct. at 1436 (citing N.Y. Civ. Prac. Law Ann. § 901). The Court held that the New York statute did not trump Fed. R. Civ. P. 23, which, "[b]y its terms . . . creates a categorical rule entitling a plaintiff whose suit meets the specified [class-action] criteria to pursue his claim as a class action." Id. at 1437. Plaintiffs interpret the decision as creating an absolute entitlement to proceed with a class action lawsuit regardless of whether pertinent state procedural steps have been completed. We disagree.

Plaintiffs read Shady Grove at a level of generality that is simply unsupported by its text. Shady Grove addressed an explicit state-law prohibition on class-action suits that expressly contradicted Fed. R. Civ. P. 23. Id. at 1437, 1441. The Supreme Court did not consider exhaustion or similar state-mandated intermediate procedures. Nor can we discern any basis on which to read it as excusing named class-action plaintiffs from the threshold procedural requirements that they would face

9

as individual litigants. Cf. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 345 (4th Cir. 1998). We are loathe to "lightly infer that a prior panel decision has been overruled," Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP, Nos. 10-1706, 10-1934, 2011 WL 2725819 at *7 n.7 (4th Cir. July 14, 2011), and see no cause to do so here.

B.

Plaintiffs' abbreviated argument that the district court should have stayed their claim pending exhaustion is similarly unavailing. Under Maryland law, the decision to stay judicial proceedings pending the exhaustion of administrative remedies is a discretionary one. See, e.g., Md.-Nat'l Cap. Park & Planning Comm'n v. Crawford, 511 A.2d 1079, 1087-88 (1986); cf. Mardirossian v. Paul Revere Life Ins. Co., 286 F.3d 733, 735 (4th Cir. 2002) (noting that, to the extent the Code "requir[es] that a claimant first invoke and exhaust the administrative remedies," a plaintiff who fails to do so "is improperly before the court and the court should dismiss for lack of subject matter jurisdiction" (emphasis added)). Nothing in the record suggests that the district court abused its discretion by determining that dismissal, rather than a stay, was warranted. To the contrary, plaintiffs' failure to initiate administrative proceedings until four years after filing suit supports the

10

court's discretionary determination that dismissal was the proper course of action.[6]

## C.

Finally, we are not persuaded by plaintiffs' claim that the district court abused its discretion by dismissing their complaint rather than granting them leave to amend. A district court may deny leave to amend a complaint when amendment would be futile or would not survive a motion to dismiss. U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). Here, each of the claims plaintiffs sought to add--breach of contract, negligence, and RICO violations--suffered from the same defect as plaintiffs' original causes of action: dependence on a threshold determination that defendants violated the Code. Consequently,

---

[6] The Court of Appeals of Maryland's recent decision in Carter v. Huntington Title & Escrow, LLC, No. 116, 2011 WL 2721926 (Md. July 14, 2011), which prompted Fed. R. App. P. 28(j) letters from both parties, only reinforces our conclusion. The Court of Appeals explicitly found that the MIC has primary jurisdiction over title-insurance overcharge claims. See id. at *1. Although the majority found that a stay, rather than dismissal, was warranted on Carter's facts, it did not revisit its settled precedent that the choice of whether to grant a stay is discretionary, noting that a "court may stay its consideration of the invoked judicial remedy and await the result of the administrative proceedings before addressing the appropriateness of the relief sought in the litigation." Id. at *16 (quoting Converge Servs. Group, LLC v. Curran, 860 A.2d 871, 881 (Md. 2004)) (emphasis added).

11

the district court did not abuse its discretion by denying leave to amend.

As discussed above, Arthur mandates administrative exhaustion when plaintiffs' claims are "dependent" on the Code. 569 F.3d at 161. By its terms, plaintiffs' proposed breach of contract claim turns on the allegation that defendants "fail[ed] to charge them the discounted refinance rate in accordance with Defendants' filed and approved rates." J.A. 2269 (emphasis added). This claim inescapably relies on an initial finding that defendants were, in fact, statutorily obligated to charge plaintiffs the discounted rate--a determination that should be made in the first instance by the MIC. See Arthur, 569 F.3d at 161. Even if plaintiffs are correct that their implied contract with defendants incorporated any statutory obligations, that does not obviate the need for a threshold assessment of whether those obligations were fulfilled.[7]

---

[7] Neither of the Maryland cases on which plaintiffs rely compels a different result. See Mardirossian v. Paul Revere Life Ins. Co., 831 A.2d 60, 64 (Md. 2003); Zappone, 706 A.2d at 66-67. Unlike the plaintiffs' claims in Mardirossian and Zappone, which were "wholly independent" of the Code, Zappone, 706 A.2d at 67, here, under plaintiffs' implied contract theory, the terms of the contract are statutorily-derived. See Appellants' Br. at 26 ("Critically, the implied contract incorporates Appellees' statutory obligation to charge a premium in accord with its filed rates."). In other words, plaintiffs explicitly invoke the Code.

12

Plaintiffs' proposed negligence claim is similarly flawed. In Maryland, as elsewhere, "[i]t is axiomatic that actionable negligence is the breach of a duty that is owed to another." Harrison v. Harrison, 285 A.2d 590, 592 (Md. 1972). Absent a duty, "no action can be sustained." Id.; see also Green v. N.B.S., Inc., 976 A.2d 279, 289 (Md. 2009). The sole duty that plaintiffs identify as a basis for their negligence claim is defendants' alleged statutory obligation "not to collect a premium or charge for insurance that exceed[ed] the premium or charge to which [plaintiffs] were entitled." J.A. 2352. Once again, the existence of a duty depends on a threshold determination by the MIC that defendants were required to charge plaintiffs a particular rate.

Plaintiffs' RICO claims are also dependent on the Code. As the district court explained, in order to succeed on these claims, plaintiffs must substantiate their allegation that they "were induced 'to unwittingly pay excessive and illegal fees in respect [of] mortgage loan transactions.'" J.A. 2398 (quoting plaintiffs' proposed amended complaint) (emphasis added); see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004) (noting civil RICO claims' injury requirement). Accordingly, the appropriateness of defendants' rates presents a threshold question for the MIC.

13

In sum, plaintiffs' proposed new claims rely on the same underlying determination as their earlier allegations-- namely, that defendants charged plaintiffs fees in excess of their filed insurance rates. As a result, plaintiffs' causes of action "explicitly depend[] on the statute that also makes administrative remedies available to plaintiffs." Arthur, 569 F.3d at 161. On these facts, the district court did not abuse its discretion by finding that amendment would be futile, as each new claim "requires proof of a violation of the Maryland Insurance Code." J.A. 2398.

IV.

For the foregoing reasons we affirm the district court's denial of plaintiffs' motions for reconsideration, grant of defendants' motion for judgment on the pleadings, and decertification of plaintiffs' class.

AFFIRMED

14