

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-2005

# Santiago v. GMAC Mtg Grp

Precedential or Non-Precedential: Precedential

Docket No. 03-4273

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Santiago v. GMAC Mtg Grp" (2005). *2005 Decisions.* Paper 625.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/625

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4273

FRANCIS SANTIAGO,
on behalf of himself
and all others
similarly situated,

Appellant

v.

GMAC MORTGAGE GROUP, INC.;
GMAC RESIDENTIAL HOLDING CORP.;
GMAC MORTGAGE CORPORATION

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 02-cv-04048)
District Judge: Honorable James K. Gardner

Argued on October 1, 2004

Before: ROTH and CHERTOFF* Circuit Judges, and
IRENAS,** Senior District Judge.

(Opinion Filed  August 4, 2005)

Michael C. Spencer, Esquire (Argued)
Milberg, Weiss, Bershad & Schulman
One Pennsylvania Plaza, 48th Floor
New York, NY 10119

Counsel for Appellant

Christine N. Kohl, Esquire (Argued)
Michael J. Singer, Esquire
United States Department of Justice
Civil Division, Room 7511
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Counsel for Amicus - USA

Charles L. Becker, Esquire (Argued)
Robert A. Nicholas, Esquire
Kevin M. Toth, Esquire

---

*Judge Chertoff heard oral argument in this case but resigned prior to the time the opinion was filed.  The opinion is filed by a quorum of the panel. 28 U.S.C. §46(d).
** Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103

James C. Martin, Esquire
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

<u>Counsel for Appellees</u>

_____

OPINION

_____

**ROTH**, Circuit Judge:

This case presents the question whether the Real Estate Settlement Procedures Act (RESPA), codified at 12 U.S.C. §2607(b) (2004), includes a cause of action for overcharges and markups imposed on a borrower by a lender or mortgage broker for settlement services rendered in connection with a mortgage loan subject to RESPA. For the reasons that follow, we find that RESPA does not provide a cause of action for overcharges but does provide a cause of action for markups.

**I.    Background**

In June 2002, Francis Santiago filed this lawsuit, on behalf of himself and all other similarly situated, claiming that GMAC Mortgage Group, Inc., GMAC Residential Holding Corporation and GMAC Mortgage Corporation (collectively

3

GMAC) violated Section 8(b) of RESPA and raising corresponding state law claims. Section 8(b) of RESPA states:

> No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b)(2004).

Santiago's Complaint alleged that, in January 2002, he obtained a loan for his home from GMAC. In connection with this loan, GMAC charged and collected fees from Santiago for settlement services, including an $85.00 tax service fee, a $20.00 flood certification fee, and a $250.00 funding fee. GMAC fully disclosed these charges to Santiago. Santiago alleged that GMAC retained third party vendors to perform the tax and flood certification services, and charged Santiago more for these services than the amount paid by GMAC to the vendors or "marked up" the service. In addition, Santiago alleged that the reasonable value of the funding service was $20.00, and GMAC charged Santiago more than that amount for providing the service or "overcharged" for the service.

On September 30, 2003, the District Court dismissed the RESPA claim under Federal Rule of Civil Procedure 12(b)(6), finding that Section 8(b) was intended to prohibit kickbacks and referral fees and does not include a cause of

4

action for the conduct alleged by Santiago.  The District Court then declined to exercise supplemental jurisdiction over Santiago's state law claims.  Santiago timely appealed.

## II.     Jurisdiction and Standard of Review

Our review of the grant of a motion to dismiss is plenary.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994).  When considering an appeal from a dismissal of a complaint pursuant to Rule 12(b)(6), we accept as true all well-pled factual allegations.  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  We review the District Court's decision declining to exercise jurisdiction over Santiago's supplemental state law claims for abuse of discretion.  Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996).

The District Court had federal question jurisdiction under RESPA, 12 U.S.C. § 2614.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    Discussion

The analysis whether RESPA provides for a cause of action for either overcharges or markups must begin with the text of the statute.  The threshold question is whether the statute clearly and unambiguously allows Santiago's claims.  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  If the statutory language is unclear, however, then we must decide whether to defer to the interpretation of the administrative agency, in this case the Department of Housing and Urban Development (HUD), as reflected in the Real

5

Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53,052 (2001) (Statement of Policy 2001-1), issued by HUD.

### A.    Overcharges

Santiago's first contention is that there is a cause of action under RESPA Section 8(b) for overcharges because the statutory text so provides and because the HUD Statement of Policy 2001-1 so concludes, and should receive deference.[2] GMAC argues that the statutory text prohibits such a cause of action and that deference is not warranted here.  The United States, as Amicus Curiae, urges us to defer to HUD's interpretation, *i.e.*, that, although overcharging is not *per se* a violation of Section 8(b), it is contrary to the requirement that the cost of a service bear a reasonable relationship to its market value and thus "may be used as evidence of a violation of Section 8 and may serve as a basis for a RESPA investigation."  24 C.F.R. § 3500.14(g)(2).  We conclude, however, that the analysis of the statutory text demonstrates that Section 8 does not provide a cause of action for overcharges.  Thus, we need not reach the question of deference.

Santiago's argument is based on his contention that

---

[2]  The District Court did not address the overcharge and markup causes of actions separately but instead referred to them collectively.  However, because Santiago has alleged two distinct causes of action and because there is both a factual difference in the allegations and a logical difference in the analysis of each cause of action under Section 8(b), it is appropriate to address them separately here.

Section 8(b) provides that an overcharge occurs when the settlement service provider charges the consumer a fee, of which only one portion is a fee for the reasonable value of "services rendered." The other portion of the fee, the amount in excess of the reasonable value, is essentially a fee for "no services rendered" that is added to the fee for "services rendered." Thus, according to Santiago's reading, Section 8 applies to overcharges because it prohibits the acceptance of "any portion, split, or percentage of any charge" for the rendering of services "other than for services actually performed."

This parsing of the statute is one that is intelligible only if the parts of Section 8(b) are read separately; if the section is read as a whole, such a meaning becomes absurd. As a whole, Section 8(b) states that no person can accept a fraction of a charge for services provided, unless they have actually provided services. To accept Santiago's reading would require dividing charges for services provided into "reasonable" and "unreasonable" portions – that is, the portion for "services rendered" and the portion for "no services rendered." Not only does Section 8(b) not make this distinction, but there is no other language in the body of the statute that instructs how to define the reasonable and unreasonable portions of a charge. Further, Section 8(d)(2) provides for treble damages for violations of Section 8(b). It would be unusual for Congress to provide for treble damages for "unreasonable" charges without any definition of "unreasonable."

Thus, because the plain language of Section 8(b) does not provide for a cause of action for overcharges, it is not necessary for us to reach the question whether HUD's

7

interpretation warrants deference.[3] It is worth noting, however, that the position advanced by the United States as Amicus Curiae is not the same as that advanced by Santiago. Rather, the United States urges only the interpretation set forth by HUD that overcharging may be evidence of a RESPA violation. Whether that interpretation is correct is not at issue in this case, as Santiago is looking to establish that Section 8

---

[3] It is not clear whether it is appropriate for us to consider legislative history to determine whether a statute is unambiguous at this point in Chevron analysis. Compare FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 137, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) (considering legislative history at step one of Chevron analysis), with K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 293 n. 4, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988)(stating that "any reference to legislative history . . . is in the first instance irrelevant" in step one of Chevron analysis) and Nat'l R.R. Passenger Corp. v. Boston & Me. Corp., 503 U.S. 407, 417, 112 S. Ct. 1394, 118 L. Ed. 2d 52 (1992) (finding only statutory text is relevant for step one of Chevron analysis). However, it is worth noting that the legislative history of RESPA supports the conclusion, above. In 1973, the year before RESPA was enacted, Congress rejected a bill setting maximum amounts on settlement charges, suggesting that the passage of RESPA the following year did not intend that the statute serve as a price control mechanism. See Haug v. Bank of America, 317 F.3d 832, 836 (8th Cir. 2003) (discussing rejection of 1973 bill), Kruse et al. v. Wells Fargo Home Mortgage, Inc., et al., 2004 WL 2008943, *4 (2d Cir. Sept. 10, 2004) (same).

8

incorporates an actual violation for overcharges.  A rejection of Santiago's reading of RESPA does not necessarily mean that HUD's interpretation is incorrect.  Accordingly, we affirm the District Court's holding that Section 8(b) does not include a cause of action for overcharges.

**B.     Markups**

The second issue we consider is whether Section 8(b) allows a cause of action for markups.  The textual interpretation urged by Santiago is that the phrase "No person shall give and no person shall accept . . . " in Section 8(b) operates to create two separate prohibitions:  (1) giving a portion of charges and (2) accepting a portion of charges.  Thus, according to this reading, a settlement service provider who marks up the cost of a service provided by a third party vendor and keeps the marked up portion of the charge is violating the second prohibition by accepting a portion of the charge for services the settlement service provider did not perform.  This interpretation was accepted in <u>Sosa v. Chase Manhattan Mortgage Corp</u>., 348 F.3d 979, 983 (11th Cir. 2003) ("The 'and' in subsection 8(b) therefore operates to create two separate prohibitions . . .. ").  This interpretation is also supported by HUD.

GMAC urges an alternate reading of Section 8(b).  This interpretation reads the phrase "No person shall give and no person shall accept" as prohibiting one activity, in which one party gives and one party accepts a fee.  The situation described by this interpretation is essentially a "kickback" where, for example, a settlement service provider arranges for a consumer to use the services of a third party vendor and that vendor then shares a portion of the amount charged to the consumer with the settlement service provider.  This is the

interpretation accepted in <u>Haug v. Bank of America</u>, 317 F.3d 832, 836 (8th Cir. 2003) ("Section 8(b) is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute."), <u>Boulware v. Crossland Mortgage Corporation</u>, 291 F.3d 261, 266 (4th Cir. 2002) ("The use of the conjuctive 'and' indicates that Congress was clearly aiming at an exchange or transaction, not a unilateral act."), and <u>Krzalic v. Republic Title Co.</u>, 314 F.3d 875, 879 (7th Cir. 2002) ("The statutory language describes a situation in which A charges B (the borrower) a fee of some sort, collects it, and then either splits it with C or gives C a portion or percentage . . . of it.").

Both the textual interpretation supported by Santiago and HUD and the one supported by GMAC are plausible readings of the statutory language. This conclusion is supported by the fact that under either reading of the statute, the parties would be in the same economic position. In a kickback arrangement, the consumer would give the settlement service provider $100 for a service, the mortgage service provider would give the third party vendor $100 for that service, and the third party vendor would return $20 to the settlement service provider as a kickback for the referral of service. In a markup arrangement, the consumer still gives the settlement service provider $100 for a service, but the settlement service provider keeps $20 and gives the third party vendor $80 for the service. In both scenarios, the borrower has been charged $100, the settlement service provider has earned $20 for a service it did not provide, and the third party vendor has earned $80 for a service it did provide.

The context in which Section 8(b) is found further

10

supports the conclusion that markups are included in the statute. The title of Section 8 of RESPA is "Prohibition against kickbacks and unearned fees," and Section 8(a) is titled "Business referrals," and prohibits the acceptance of "any fee, kickback or thing of value" while Section 8(b) is titled "Splitting charges," and prohibits the acceptance of "any portion, split, or percentage of any charge." Thus, GMAC's interpretation that Section 8(b) applies only to kickbacks is belied by the use of the term "kickback" in Section 8(a) and not in Section 8(b). This use of language suggests that Section 8(b) is meant to provide for a situation other than kickbacks. Further, a reading of Section 8(b) that allows a cause of action for markups is consistent with the title of Section 8 that prohibits both kickbacks and unearned fees.

Our conclusion that Section 8(b) allows a cause of action for unearned markups does not fully resolve the issue of whether the markups imposed by GMAC violated the law. GMAC may argue that it provided services ancillary to those provided by the third party vendor and that these services justify the additional charge. This argument might raise the issues of whether such ancillary services were nominal, whether the amount of any markup had to be reasonable in light of the additional services provided, or whether these extra services were already included in some other settlement service charge paid by the borrower. Regulation X at 24 CFR § 3500.14(c) specifically bars charges for "nominal services" and states that "duplicative fees" are unearned fees which violate the law. The parties have not fully briefed these issues, and the state of the record is inadequate for us to resolve them. These issues will have to be decided by the

11

District Court on remand.

In sum, we conclude that the District erred in holding that Section 8 does not provide a cause of action for markups. We will remand this claim to the District Court.[4]

---

[4] Although we have determined that the statutory text of RESPA clearly allows a cause of action for markups, *but see* Kruse et al. v. Wells Fargo Home Mortgage, Inc., et al., 383 F.3d 49 (2d Cir. 2004) (holding that the text of Section 8(b) was ambiguous as to markups because the interpretations urged by both sides were reasonable but that Chevron deference was warranted because Statement of Policy 2001-1 was promulgated in accordance with the legislative delegation of authority), it is worth noting that, even if we had found the text ambiguous, deference to HUD's interpretation would be appropriate. Deference to an agency's interpretation can be either mandatory, under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), or persuasive, under Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944). In this case, because we would find HUD's interpretation to be persuasive under Skidmore, we would not need to reach whether Chevron deference is warranted. See Bonneville International Corp. v. Peters, 347 F.3d 485, 490 (3d Cir. 2001) ("Because we find that the [agency's] interpretation is persuasive even under the less demanding standard of Skidmore deference, we need not go on to parse out whether Chevron deference should, in fact, be accorded the [agency's] regulation here.")

"An agency interpretation may merit some deference whatever its form, given the specialized experience and broader

12

## IV.    Conclusion

For the reasons discussed above, we conclude that the text of Section 8(b) of RESPA does not support a cause of action for overcharges by settlement service providers.  Thus, we will affirm the District Court's decision to dismiss Santiago's claim for overcharges.  However, the text of Section 8(b) clearly allows for a cause of action for markups.  Thus, the District Court's dismissal of Santiago's cause of action for markups is reversed and remanded for further proceedings.  Moreover, because the District Court erred in dismissing the federal cause of action for markups, its decision to decline to exercise supplemental jurisdiction over Santiago's state law causes of action is vacated.

---

investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires." United States v. Mead Corp., 533 U.S. 218, 234 (2001) (internal citations omitted).  The HUD interpretation in this case is both helpful and persuasive, particularly in light of the agency's ongoing consideration of this matter and expertise in the area of federally-related home mortgages.  Thus, because that interpretation reflects both agency expertise and consideration and is neither contrary to the language of the statute nor an unreasonable interpretation, we conclude that the HUD interpretation is persuasive authority.