NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2757
_____

ARTHUR R. and JANE M. TUBBS, individually
and on behalf of all other similarly situated,

Appellants

v.

NORTH AMERICAN TITLE AGENCY, INC., NORTH AMERICAN
TITLE GROUP, INC and INDEPENDENCE
ABSTRACT AND TITLE AGENCY

On Appeal of a Decision of the United States District Court
for the District of New Jersey (Civ. No. 08-3178)
District Judge:  Joseph E. Irenas
_____

Argued on February 2, 2010

Before: McKEE, *Chief Judge*, HARDIMAN, *Circuit Judge*,
and POLLAK, *District Judge*.[*]

(Filed:August 5, 2010)

Robert J. La Rocca (argued)
Christina Donato Saler
Kohn, Swift & Graft, P.C.
One South Broad Street, Suite 2100

_____

[*]  Honorable Louis H. Pollak, Senior Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

Philadelphia, PA 19107

Charles J. Bloom
Neil C. Schur
Stevens & Lee, P.C.
1415 Marlton Pike East, Suite 506
Cherry Hill, NJ 08034

      Attorneys for Appellant


Peter Buscemi (argued)
Paul D. Weller
Kristofor T. Henning
Franco A. Corrado
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

      Attorneys for Appellee

OPINION


POLLAK, *District Judge*

Arthur and Jane Tubbs appeal the District Court's dismissal of their complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Because the District Court looked at matters outside the complaint, we will reverse.

**I.**

Appellants' amended complaint alleges that, in the spring of 2008, they refinanced two existing mortgages, held by Wachovia Bank, with defendant North American Title Agency serving as the settlement agent for the refinancing.  Appellants allege that they

paid for various services for which Title Agency charged them at the closing. Included in these charges was a $150 fee ($75 per mortgage) labeled "Release Recording Fees." These are averred to be fees for the recording of the release of the prior mortgages with the county clerk's office. Appellants further allege that Wachovia provided a payoff statement to Title Agency stating that it was charging $80 ($40 per mortgage) for the same recording of the release of the mortgages with the county clerk. Appellants allege that Title Agency knew Wachovia was performing the recording of the release, and that Title Agency performed no services for the $150 it charged. Appellants claim that this violated § 8(b) of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607(b).[1]

The District Court granted defendants' motion to dismiss. Despite the allegations in the amended complaint that "Title Agency performed no services to earn the $150.00 fee," the District Court found that "Title Agency's charge was not a markup of Wachovia's fees, but rather a charge for its own services." The District Court listed a range of potential services that Title Agency would have had to conduct, such as obtaining payoffs statements from Wachovia, collecting money from the parties to the settlement, making distributions to prior mortgagees, and verifying that Wachovia did

---

[1] Section 8(b) states: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

2

prepare and record the release.

## II.

We review de novo a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Vallies v. Sky Bank*, 432 F.3d 493, 494 (3d Cir. 2006). In evaluating the propriety of the dismissal, we accept all factual allegations in the complaint as true, and construe the complaint in the light most favorable to the plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002). With limited exceptions, a district court cannot consider materials outside the pleadings without first converting the motion to dismiss into a motion for summary judgment. *In re Rockefeller Ctr. Props, Inc. Secs. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999).

The District Court erred by going beyond the complaint to find that the $150 fee was for services that Title Agency had in fact performed, when the complaint alleges that "Title Agency performed no services to earn the $150.00 fee it charged Plaintiffs." Because the question of whether Title Agency performed or did not perform services may alter the analysis of whether the plaintiffs properly stated a claim under § 8(b) of REPSA, as construed by this court in *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d Cir. 2005),[2] we will reverse the District Court's order and remand the case to the District

---

[2] In *Santiago*, we held that § 8(b) does not provide a cause of action for "overcharges,"–where a single entity charges more than the reasonable value of the services it provides–but does allow a cause of action for "markups"–where a settlement service provider charges more for services than it pays to the third-party vendor who performs the services. 417 F.3d at 386-89.

Court for further proceedings.

## III.

For the reasons stated, the order of the District Court is reversed and the case remanded to that court for further proceedings.

*Tubbs v. North America Title,* No. 09-2757
HARDIMAN, *Circuit Judge*, Dissenting

The majority holds that the District Court erred when, at the motion to dismiss stage, it relied on materials outside the amended complaint to conclude that the Title Agency performed services to earn the $150 fee at issue here. I agree that the District Court erred in this regard. According to my colleagues, a remand is necessary because "the question of whether Title Agency performed or did not perform services may alter the analysis of whether the plaintiffs properly stated a claim under § 8(b)" of the Real Estate Settlement Procedures Act (RESPA). I disagree that a remand is appropriate, however, because the record and the briefs demonstrate that Plaintiffs cannot state a claim under § 8(b) regardless of whether the Title Agency performed any services. In my view, the Tubbses' concession that the Title Agency did not split the $150 fee with any third party dooms their RESPA claim.[1] Accordingly, I respectfully dissent.

## I.

The amended complaint avers that the Title Agency violated § 8(b) when it charged an unearned $150 fee. Significantly, the amended complaint does not allege that the Title Agency split or otherwise shared this $150 fee with Wachovia (or anyone else); it merely avers that the Title Agency kept this fee entirely for itself. The amended complaint further alleges that the Tubbses separately paid a total of $80 to Wachovia for

---

[1] Because I would affirm the District Court's dismissal of the Tubbses' sole federal claim, I would also affirm the District Court's decision to decline supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367©.

1

the same services.  The text and structure of § 8(b) of RESPA, however, make clear that such allegations are insufficient to state a claim for relief.

**A.**

Section 8(b) of RESPA prohibits the giving or receiving of "any *portion, split, or percentage* of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed."  12 U.S.C. § 2607(b) (emphasis added).  The words "portion," "split," and "percentage" necessarily imply something less than the whole amount.  These three words, in turn, modify the "charge" or fee that one receives in conjunction with real estate services.  Thus, the plain language of § 8(b) indicates that the statute prohibits receiving a *portion* of an unearned fee for real estate settlement services; it does not prohibit the receipt of the entire, undivided fee.

Our prior cases interpreting § 8 of RESPA have recognized as much.  *See Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 387 (3d Cir. 2005) ("Section 8(b) states that no person can accept *a fraction of a charge* for services provided, unless they have actually provided services.") (emphasis added); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 761 (3d Cir. 2008) (noting that the words "any portion, split or percentage thereof" in § 8(b) indicated that Congress knew how to "differentiate between all charges and a portion of those charges").  Indeed, to hold that § 8(b) prohibits the receipt of an entire unearned fee would render the words "portion, split, or percentage" meaningless. *See Erienet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 516 (3d Cir. 1998) (we must give

2

effect to all provisions of a statute "so that no part will be inoperative or superfluous, void, or insignificant") (quoting *Pa. Med. Soc'y v. Snider*, 29 F.3d 886, 895 (3d Cir.1994)) (internal quotation marks omitted). These precedents, along with the plain language of § 8(b), confirm that a plaintiff must allege that a fee was split to state a claim under RESPA.

My interpretation is buttressed by the structure of § 8. When interpreting a particular subsection, we must evaluate its language in the broader context of "the language and design of the statute as a whole." *Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659, 671 (3d Cir. 1989) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)) (internal quotation marks omitted). Here, the operative language of § 8(b) appears under the heading "Splitting charges." *See* 12 U.S.C. § 2607(b). When read in conjunction with the statutory language, Congress's choice of a title for § 8(b) strongly suggests that a plaintiff must allege that a defendant received some portion of a larger fee to state a claim under the statute. *See Santiago*, 417 F.3d at 389 ("Section 8(b) is titled 'Splitting charges,' and prohibits the acceptance of 'any portion, split, or percentage of any charge.'").

Moreover, if Congress wanted to extend § 8(b) to cover situations in which a defendant kept an entire fee, it knew how to do so. Section 8(a), which immediately precedes §8(b) and does not appear under the heading "Splitting charges," does not require a defendant to accept a "portion, split, or percentage" of an unearned charge. *See*

3

12 U.S.C. § 2607(a). Instead, § 8(a) imposes liability on a defendant who accepts "any fee, kickback, or thing of value." *Id*. When read together, these sections suggest that Congress intended to punish different conduct when it included the language "portion, split, or percentage" in § 8(b) but not in § 8(a). By giving full effect to the disparate language of each subsection, my interpretation avoids rendering the other subsection superfluous.

The text and structure of § 8(b) thus make clear that, to state a claim, the Tubbses were required to allege that the Title Agency split the $150 fee with a third party. Instead of doing so, the Tubbses alleged that the Title Agency received a $150 fee for which it performed no services. In addition, the Tubbses averred that "Wachovia separately charged Plaintiffs, and Plaintiffs paid Wachovia, $40 for each mortgage" to perform the services for which they were billed by the Title Agency. Thus, the Tubbses alleged that they paid two separate and distinct charges—one to Wachovia and the other to the Title Agency—for the same service. Because the Tubbses did not—and cannot—allege that the fee received by the Title Agency was a smaller "portion, split, or percentage" of a larger charge, as § 8(b) requires, I would hold that they have failed to state a claim for relief.[2]

---

[2] In support of their argument that § 8(b) should be interpreted contrary to its text, the Tubbses urge us to defer to HUD's interpretation of the statute, which provides: "A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates" § 8(b). 24 C.F.R. § 3500.14(c). HUD has also issued a policy statement in which the agency "specifically

4

**B.**

The Tubbses argue that our decision in *Santiago* made clear that a plaintiff need not allege that a fee was split to state a claim under § 8(b). They claim the sole inquiry under *Santiago*'s interpretation of § 8(b) is whether the Title Agency actually performed a service to earn the fee at issue. But *Santiago* did not extend liability under § 8(b) that far. *Santiago* considered whether § 8(b) includes a cause of action for overcharges and markups. In RESPA parlance, an overcharge occurs when one performs settlement services itself but charges a fee that is substantially higher than its reasonable cost. *Santiago*, 417 F.3d at 387; *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 53 (2d Cir. 2004). A markup occurs when one outsources a settlement service to a third party and charges the consumer a fee that exceeds one's actual costs without providing any additional service. *Santiago*, 417 F.3d at 389; *Kruse*, 383 F.3d at 53.

In *Santiago*, we held that § 8(b) prohibits markups, but nowhere did we imply that a plaintiff need not allege that a fee was split to state a claim under § 8(b). As the Title Agency notes, the markup at issue in *Santiago* necessarily included a split fee: the

interprets §8(b) as not being limited to situations where at least two persons split or share an unearned fee for the provision to be violated." 66 Fed. Reg. 53052, 53057. Because I believe the "intent of Congress is clear, that is the end of the matter" and we need not defer to HUD's counter-textual interpretation of § 8(b). *Santiago*, 417 F.3d at 386 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)). Likewise, we need not consider the Title Agency's argument that the legislative history of § 8(b) makes clear that a defendant must split a fee with a third party to be liable.

defendant charged the consumer an inflated fee, part of which was passed on to the vendor who actually performed the service and part of which the defendant kept for itself. Indeed, the only practice that we found beyond § 8(b)'s grasp in *Santiago* was the overcharge, which by definition included no splitting of fees. *See* 417 F.3d at 387.

The Tubbses' reliance on *Santiago* is undercut further by our statement that "[a]s a whole, Section 8(b) states that no person can accept *a fraction of a charge* for services provided, unless they have actually provided services." *Id*. (emphasis added). Our more recent decision in *Alston* only confirms that *Santiago* cannot bear the weight that the Tubbses place upon it. In *Alston*, we considered whether a mortgage insurance kickback scheme was actionable under § 8 of RESPA even if the plaintiffs suffered no damages. 585 F.3d at 755. Examining § 8(b) in the course of our interpretation of RESPA's damages provision, § 8(d), we noted:

> It cannot seriously be contended that when Congress sought to differentiate between all charges and a portion of those charges, it did not know how to do so. In section 8(b), for example, Congress differentiated between the overall charge for a settlement service and "any portion, split or percentage thereof" . . . .

*Alston*, 585 F.3d at 761. Consistent with the foregoing quotation, I believe the plain language of § 8(b) continues to refer to "a portion" of a settlement charge after *Santiago*.

## C.

Although interpretations of § 8(b) vary slightly among courts of appeals, the Tubbses have cited no appellate decision which has held that a plaintiff can state a claim

for relief under §8(b) of RESPA absent an allegation that the defendant split the fee at issue with a third party. As the Title Agency noted, the Courts of Appeals for the Fourth, Seventh, and Eighth Circuits adhere to its view that a split fee is required. *See Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002) (holding "§ 8(b) only prohibits overcharges when a 'portion' or 'percentage' of the overcharge is kicked back to or 'split' with a third party"); *Mercado v. Calumet Fed. Sav. & Loan*, 763 F.2d 269, 271 (7th Cir. 1985) (observing that §8(b)'s plain language requires a plaintiff to allege that a defendant shared a "portion, split, or percentage" of an unearned portion of a fee with some "other person" to state a claim); *Haug v. Bank of Am.*, 317 F.3d 832, 836 (8th Cir. 2003) (interpreting § 8(b) as "an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute").[3]

---

[3] The Tubbses argue that *Santiago* declined to follow the circuit courts which require a defendant to allege a split and "rejected their reasoning." This overstates the nature and extent of *Santiago*'s disagreement with those decisions, however. *Santiago* did not disagree with the portions of *Boulware*, *Haug*, or *Krazlic v. Republic Title Co.*, 314 F.3d 875, 879 (7th Cir. 2002), that hold a plaintiff must allege a split fee to state a claim under § 8(b). Rather, we cited those decisions in *Santiago* to emphasize our disagreement with their interpretation of the phrase "no person shall give and no person shall accept" as creating a single prohibition that requires *both* a culpable giver and a culpable receiver of an unearned fee. *See* 417 F.3d at 388-89. Like the Eleventh Circuit in *Sosa v. Chase Manhattan Mortgage Corporation*, 348 F.3d 979 (11th Cir. 2003), we interpreted that language as creating two independent prohibitions—one on giving, the other on receiving—which in turn allowed us to find that markups, which by definition include only a culpable receiver, are within the ambit of § 8(b). *See Santiago*, 417 F.3d at 388-89. We did not cite *Boulware*, *Haug*, or *Krazlic* to emphasize that we disagreed with their assumption that § 8(b) requires a plaintiff to allege a split fee. In fact, it would have been unnecessary to do so, since the markup theory we approved in *Santiago* necessarily included a split fee.

7

The Tubbses rely principally on the Eleventh Circuit's decision in *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979 (11th Cir. 2003), which they claim held that § 8(b) of RESPA does not require a defendant to split a fee to be liable. *Sosa* held no such thing, however. Rather, the Eleventh Circuit seemed to assume that § 8(b) required that a defendant accept something *less* than an entire fee to be liable, stating: "[g]iving *a portion* of a charge is prohibited regardless of whether there is a culpable acceptor, and accepting *a portion* of a charge is prohibited regardless of whether there is a culpable giver." *Id*. at 982 (emphasis added). Thus, *Sosa* requires a plaintiff to allege a split fee with a third party to state a claim under § 8(b), even if the plaintiff need not allege that both participants were culpable actors.

The Tubbses also rely heavily on the Second Circuit's decision in *Kruse*, arguing it held that § 8(b) does not require a defendant to allege a split fee to state a claim. Although *Kruse* did defer to HUD's interpretation that § 8(b) covered markups, a markup necessarily involves a split fee, since the defendant keeps a portion for itself and passes the rest on to the third party that performed the service. *See Kruse*, 383 F.3d at 53. Thus, nothing about *Kruse*'s approval of markups in the § 8(b) context can be read to eliminate § 8(b)'s textual requirement that a defendant receive only a "portion, split, or percentage" of a fee to be liable. Indeed, the only theory of liability that the Second Circuit held to be "clearly and unambiguously" beyond the reach of § 8(b) was the overcharge, which by definition involves no split fee since the defendant is alleged only to have charged too

8

much for its own service.  *See* 383 F.3d at 56.  Accordingly, the Tubbses' reliance on *Kruse* is misplaced.

In sum, the Tubbses are unable to identify any persuasive authority in support of their argument that they need not allege that the Title Agency split the $150 fee at issue to state a claim under §8(b).  This is unsurprising in light of the statutory text's requirement that one receive a "portion, split, or percentage" of an unearned fee to be liable.

**D.**

In a fallback argument, the Tubbses cite a portion of our analysis in *Santiago* for the proposition that their $150 payment to the Title Agency should be combined with their $80 payment to Wachovia and regarded as a single $230 payment.  Such an approach is required, argue the Tubbses, by the "economic reality analysis" of *Santiago*.

In holding that §8(b) covered both markups as well as kickbacks, *Santiago* noted that "the parties would be in the same economic position" regardless of whether a defendant engaged in a kickback or a markup scheme.  417 F.3d at 388.  Irrespective of how the defendant subsequently divided the fee received from the plaintiff, we noted, the plaintiff would be charged the same amount at the outset of the transaction.  *Id*.  *Santiago* thus did not mandate any "economic reality analysis" when assessing claims under § 8(b).  Rather, the Court simply observed that to the consumer, there was little practical difference between a kickback and a markup when concluding that § 8(b) prohibited both types of conduct.  Accordingly, *Santiago* does not require us to combine the two distinct

charges paid by the Tubbses into one under the vague rubric of "economic reality."

The Tubbses' attempt to aggregate several distinct fees into one single charge also contravenes the text of § 8(b), which provides that "no person shall accept any portion, split, or percentage of any *charge* made or received" without providing services. 12 U.S.C. § 2607(b) (emphasis added). The text of § 8(b) contemplates a single, discrete charge that is subsequently split, not multiple charges paid to different entities at the outset, before they ever pass through a common defendant, which are later combined only for the purposes of litigation. Combining charges in this way would contradict the well-pleaded allegations of the Tubbses' own amended complaint, where they averred that the fees were separately charged and paid.

Accepting the Tubbses' economic reality theory also would vitiate the requirement that a defendant split a fee with a third party to be liable under § 8(b). The Tubbses essentially ask the Court to aggregate multiple fees paid to different parties into a single "charge." Under this approach, a plaintiff could *always* manufacture a split charge—and thus liability under § 8(b)—simply by picking and choosing various charges from a HUD-1A form and combining them. I would not render § 8(b)'s requirement of a split charge meaningless in this fashion.

## II.

In conclusion, I believe the Tubbses were required to allege that the Title Agency accepted a "portion, split, or percentage" of a fee without performing the corresponding

10

services in order to state a claim under § 8(b) of RESPA. Nothing in *Santiago* suggests otherwise. Although the Tubbses alleged that the Title Agency received a $150 fee for which it performed no services, they failed to allege that the Title Agency split that fee with any third party. Therefore, the Tubbses' claim under § 8(b) of RESPA was properly dismissed. *See, e.g.*, *Donahue v. Gavin*, 280 F.3d 371, 372 n.2 (3d Cir. 2002) (observing that we may affirm for any reason supported by the record).

For the foregoing reasons, I would affirm the judgment of the District Court.