NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-4510

_____

ARTHUR R. TUBBS; JANE M. TUBBS, individually and on behalf of all others
similarly situated,

*Appellants*

v.

NORTH AMERICAN TITLE AGENCY, INC.; NORTH AMERICAN TITLE GROUP,
INC.; INDEPENDENCE ABSTRACT & TITLE AGENCY

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 1:08-cv-03178)
District Judge: Honorable Joseph E. Irenas

_____

Argued December 18, 2012

Before: McKEE, *Chief Judge*, SLOVITER and VANASKIE, *Circuit Judges*

(Opinion Filed:  July 19, 2013)

Robert J. LaRocca (Argued)
Kohn, Swift & Graf
One South Broad Street
Suite 2100
Philadelphia, PA 19107

    *Counsel for Appellants*

Kristofor T. Henning (Argued)
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

    *Counsel for Appellees*

-----------

## OPINION

-----------

McKee, *Chief Judge*

Arthur and Jane Tubbs appeal an order entered by the District Court granting final judgment to North American Title Agency, Inc., and denying leave to file a second amended complaint.[1] For the reasons discussed below, we will affirm in part, and reverse and remand in part.[2]

## I.

-----------

[1] Our review of the order granting final judgment encompasses the District Court's grant of summary judgment. In addition, we will refer to North American Title Agency and its corporate affiliates, North American Title Group, Inc., and Independence Abstract and Title Agency, as the "Title Agency."

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291. The District Court had federal question jurisdiction under 12 U.S.C. § 2614 and 28 U.S.C. § 1331, and it exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Since we write primarily for the parties who are familiar with this case, we will only recite the factual and procedural history that is essential to our analysis.

In 2008, the Tubbs refinanced two mortgages held by Wachovia. The new lender issued a loan that satisfied the outstanding balance and costs for both Wachovia mortgages. The settlement agent for the refinancing was the Title Agency.

Before closing, the Title Agency requested that Wachovia provide Payoff Statements. Wachovia sent the Title Agency Payoff Statements, which provided that the total amount due for one loan was $124,107.82, and that the amount due for the other was $14,167.40. Each total included a $40 charge ($80 collectively) by Wachovia for a "Recording Fee," which covered the costs Wachovia incurred in recording the release and satisfaction of each mortgage.

At closing, the Title Agency prepared a HUD-1A Settlement Statement which listed all disbursements and fees applied to the refinancing. Lines 1501 and 1502 of the Settlement Statement, titled "Disbursement to Others," identified proceeds disbursed to Wachovia to satisfy the existing mortgages, which, as mentioned, was $124,107.82 for one mortgage, and $14,167.40 for the other. Line 1203, titled "Release Recording Fees," identified $150 ($75 per mortgage) in proceeds disbursed to the Title Agency. Line 1101 identified a $325 charge by the Title Agency for a "Settlement or Closing Fee."

Based on those purported disbursements and fees, the Tubbs filed a putative class action in the District Court against the Title Agency under § 8(b) of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2607(b). The relevant provision of

3

RESPA prohibits settlement service providers from splitting real estate transaction fees with third-parties, other than for services actually performed. The Tubbs alleged that RESPA was violated because Wachovia performed all recording services for $80, the Title Agency knew Wachovia had done so, and therefore, the Title Agency should not have charged $150 for "Release Recording Fees." In addition, the Tubbs brought claims under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2, and state law claims for breach of contract, breach of a covenant of good faith and fair dealing, and unjust enrichment.

The District Court dismissed the Tubbs' complaint for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6). *See Tubbs v. North American Tile Agency, Inc.*, 622 F. Supp. 2d 207, 211 (D.N.J. 2009). The Tubbs appealed, and a panel of this Court reversed and remanded based on its conclusion that the District Court had erred in dismissing the Tubbs' complaint by considering materials outside of the pleadings without first converting the motion to dismiss into a motion for summary judgment. *See Tubbs. v. North American Title Agency, Inc.*, 389 Fed. App'x 104, 105-06, 2010 WL 3044067 (3d Cir. 2010) (not precedential).

On remand, the District Court allowed discovery and thereafter granted summary judgment to the Title Agency. In an oral opinion, the Court explained that the Tubbs' RESPA claim failed because they could not show "fee splitting," as required under § 8(b). The Court found that the Title Agency charged the Tubbs separately from

4

Wachovia, and that the Title Agency performed the following services for its $150

Release Recording Fee:

> Title Agency was required to obtain "payoff" statement[s]
> [from Wachovia], collect money from the appropriate parties
> to the settlement, make appropriate distribution[s] to prior
> mortgagees and follow-up to verify that the mortgage[e] did
> indeed prepare -- the mortgagee did indeed prepare and
> record the release[s]. As such, this is not a situation where
> the title agency markup [sic] Wachovia's [$80] charge for
> recording release[s], but rather charged a separate fee for its
> own services relating to that release.

Transcript of Oral Opinion at 68, *Tubbs. v. North American Title Agency, Inc.*, No. 1:08-cv-03178 (Nov. 10, 2011).

The Court also held that the Tubbs' CFA claim failed because the Title Agency

did not engage in any fraudulent conduct, and that the state law contract claims failed

because there was no meeting of the minds to establish an implied contact. Accordingly,

the Court entered an order granting final judgment on all claims in favor of the Title

Agency. In doing so, the Court also denied a request by the Tubbs for leave to file a

second amended complaint to assert new claims against the Title Agency's corporate

affiliates. The Court reasoned that the Tubbs had waited three years after litigation began

before seeking leave to amend and that such a lapse of time amounted to undue delay.

## II.

We exercise plenary review over a grant of summary judgment. *See Liberty

Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012). Summary

judgment is only appropriate when there is no issue in dispute regarding any material

fact, such that the moving party is entitled to judgment as a matter of law. *See id.* A

grant of summary judgment is reviewed in the light most favorable to the non-moving party. *See id.* This means that all reasonable inferences must be drawn in the non-movant's favor. *See id.* We review a denial of leave to file a seconded amended complaint for an abuse of discretion. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993).

**III.**

**A.**

The Tubbs first contend that the District Court erred in concluding that RESPA was not violated. They claim that RESPA was violated by the Title Agency splitting a fee with Wachovia for recording the release of the mortgages, even though the Title Agency did not perform independent services to earn its $150 fee. *See* Brief of Appellant at 17.

Section 8(b) of RESPA provides as follows:

> Splitting charges
>
> No person shall give and no person shall accept, *any portion, split, or percentage of any charge*, made or received for the rendering of a real estate service in connection with a transaction involving a federally regulated mortgage loan *other than for services actually performed*.

12 U.S.C. § 2607(b) (emphasis added).

In *Santiago v. GMAC Mortgage Group, Inc., et al.*, 417 F.3d 384, 385-86 (3d Cir. 2005), we examined whether § 8(b) is violated when a closing agent charges a borrower a settlement fee in excess of the amount the closing agent pays a third-party to actually

perform the settlement service, and the closing agent retains the excess charged. *See id.* at 385-86. We held that such conduct, known as a "markup," may constitute illegal fee splitting under RESPA, but that a mere overcharge does not. *See id.* at 386-89.

Specifically, an overcharge occurs when a settlement service provider charges a fee in excess of the actual cost of services performed and retains the excess portion of the fee. *See id.* at 387-88. We concluded that overcharges, which are merely a windfall, do not violate § 8(b). *See id.* In doing so, we noted that the contrary approach would force courts to continuously wrestle with the issue of what constitutes a reasonable fee. On the other hand, we explained that there are two ways in which markups can violate § 8(b). First, a service provider may markup the cost of a service provided by a third-party vendor, and keep the marked-up portion of the charge. Such conduct is a violation of § 8(b) because the service provider accepts a "portion, split, or percentage" of a charge for services that it did not perform. *See id.* at 388-89. Second, an improper markup may occur in the form of a "kickback," "where, for example, a settlement service provider arranges for a consumer to use the services of a third-party vendor, and that vendor then shares a portion of the amount charged to the consumer with the settlement service provider." *Id.* at 388 (citing *Huang v. Bank of America, N.A.*, 317 F.3d 832, 836 (8th Cir. 2003)).

After we decided *Santiago*, the Supreme Court decided *Freeman, et al. v. Quicken Loans, Inc.*, 132 S. Ct. 2034 (2012). Our approach in *Santiago* was consistent with the Court's analysis and holding in *Quicken Loans*. *See id.* at 2040.

7

Here, the Title Agency's charge did not violate § 8(b) of RESPA because the Title Agency did not split a fee with Wachovia. Rather, the record shows that Wachovia and the Title Agency each separately charged the Tubbs for work that they each performed. Wachovia charged the Tubbs $80 for recording the release and satisfaction of the mortgages. The Title Agency charged the Tubbs $150 for, *inter alia*, obtaining Payoff Statements from Wachovia, and following-up to verify that Wachovia actually recorded the mortgage releases. *See supra* pp. 4-5.

Accordingly, we will affirm the grant of summary judgment to the Title Agency on the Tubbs' RESPA claim.[3]

**B.**

The District Court explained its grant of summary judgment to the Title Agency on the CFA claim as follows:

> Here, basically, the argument is you violated RESPA and, therefore, you committed a fraud. But if they violated RESPA, then the Court will say there was a violation of RESPA and then you'll have your - - I don't think that's the type of fraud that the Consumer Fraud Act is dealing with.

Transcript of Oral Opinion at 70-71 *Tubbs. v. North American Title Agency, Inc.*, No. 1:08-cv-03178 (Nov. 10, 2011).

---

[3] At most, it could be argued that the Title Agency overcharged the Tubbs by charging $150 for work pertaining to the mortgage releases and recording, and another $325 "Settlement or Closing Fee," both amounting to a total of $475 to the Title Agency for all services related to closing. *See infra* pp. 10-11. However, such an overcharge argument fails because it essentially amounts to a windfall—or unearned, undivided fee—which does not violate § 8(b) because it does not involve a fee split with another. *See Freeman*, 132 S. Ct. at 2040; *Santiago*, 417 F.3d at 387-88.

Thus, the District Court apparently viewed the Tubbs' CFA claim as being dependent upon the merit of their RESPA claim, and concluded that the CFA claim failed because the RESPA claim was meritless. The Tubbs contend that such reasoning is incorrect, and that the CFA was violated because the Title Agency unlawfully induced the Tubbs to pay money by "misrepresent[ing] that the $150 charge was a Government Recording and Transfer Charge," and "because the $150 duplicated services for which the Tubbs already paid [the Title Agency] $325." Brief of Appellant at 54.

The CFA prohibits "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. § 56:8-2. "Courts have emphasized that, like most remedial legislation, the [CFA] should be construed liberally in favor of consumers." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (N.J. 1994).

To establish their CFA claim, the Tubbs must show (1) that the Title Agency engaged in unlawful conduct, (2) that the Tubbs suffered an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *See Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). Where the alleged unlawful conduct is an affirmative act, as opposed to an omission, intent does not have to be proven. *See Cox*, 674 A.2d at 462.

We must assume that the Title Agency listed its $150 Release Recording Fee on a line-item of the Settlement Statement designated for government recording and transfer

charges. *See Liberty Lincoln-Mercury, Inc.*, 676 F.3d at 323 ("We must view the facts in the light most favorable to the non-moving party, who is entitled to 'all reasonable inferences from the record.'") (quoting *Horn v. Thoratec Corp.*, 376 F.3d 163, 166 (3d Cir. 2004)). In addition, at her deposition, the Title Agency's closing agent testified that, although the $150 was related to recording services the Title Agency performed, such money was not used to pay the government for recording. *See* App. at 183. Thus, by charging the Tubbs $150 that was not paid to the government for recording the mortgages, the Title Agency may have made an unlawful misrepresentation. Such conduct could be unlawful regardless of whether the Tubbs were actually mislead by the alleged misrepresentation because the CFA expressly provides for liability "whether or not any person has in fact been mislead, deceived or damaged there by." N.J.S.A. § 56:8-2. Indeed, under the CFA, "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud," not whether the consumer is actually duped. *See Cox*, 674 A.2d at 462.

Moreover, viewing the facts in the light most favorable to the Tubbs, a finder of fact could conclude that the Title Agency's $325 "Settlement or Closing Fee" covered the cost of all services the Title Agency performed, and that the $150 charge for "Release Recording Fees" was an overcharge. Any such overcharge could constitute an ascertainable loss because such fees were paid from the refinancing loan obtained by the Tubbs. *See* Brief of Appellant at 54 (Title Agency "also violated the CFA because the $150 duplicated services for which the Tubbs already paid [the Title Agency] $325.").

10

Furthermore, in *Freeman*, the Supreme Court explained that "Congress may well have concluded that existing remedies, such as state-law fraud actions, were sufficient to deal with the problem of entirely fictitious fees, whereas legislative action was required to deal with the problems posed by kickbacks and fee splitting." 132 S. Ct. at 2044. Thus, the District Court's erred in assuming that the Tubbs' CFA claim was tied to the success of their RESPA claim.

Accordingly, we will reverse the grant of summary judgment to the Title Agency on the Tubbs' claim under the CFA.

## C.

The Tubbs also argue that the District Court erred in granting summary judgment to the Title Agency on the claims for breach of contract, breach of a covenant of good faith and fair dealing, and unjust enrichment. The Tubbs contend that such claims have merit because there was an implied contract based on the fact that the Tubbs "paid [the Title Agency] to be the settlement agent," and the Title Agency "conducted the closing, and disbursed the proceeds." Brief of Appellant at 59. The District Court explained its rejection of these claims as follows:

> As to the contract claim, it's really almost the same thing, there was no meeting of the minds as to what the fees charged would be. Is there an applied [sic] duty to obey the law in the relationship between the Tubbses [sic] and the title agency? Yes. The title agency was obligated to obey the law. And if, in fact, they violated RESPA as it turns out the Circuit or the Supreme Court says RESPA was violated in this circumstance, well, I guess [there] also might well be a breach of an applied [sic] contract as well. But since I found that there is no violation of RESPA, that there is no

11

> contractual violation or violation of an applied [sic] contract,
> I'm going to enter an appropriate order.

Transcript of Oral Opinion at 71, *Tubbs. v. North American Title Agency, Inc.*, No. 1:08-cv-03178 (Nov. 10, 2011).

The District Court thus appears to have held that there was no implied contract because there was no "meeting of the minds" regarding what fees would be charged. It appears the Court also concluded that, even if there was an implied contract, neither such contract, nor a duty of good faith and fair dealing could have been breached because there was no violation of RESPA. No explanation was provided regarding the unjust enrichment claim.

Under New Jersey law,[4] "a contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (internal quotation omitted). "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." *Id.* An implied contract is created through conduct, *See id.*, such that "when an offeree accepts an offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms." *Id.* at 285. In addition, "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). "That covenant is among the few terms that courts have been called upon to supply." *Id.* (internal quotation

---

[4] The parties do not dispute that New Jersey law applies for the purpose of evaluating the contractual claims.

omitted).  It essentially requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . ."  *Id.* at 1126-27 (internal quotation omitted).

Viewing this record in the light most favorable to the Tubbs, one could reasonably conclude that an implied contract existed based on the conduct of the parties.  The Title Agency charged the Tubbs for services provided prior to and at the closing, and the Tubbs accepted those services and paid for them with the proceeds of the new loan.  *Cf. Weichert Co. Realtors*, 608 A.2d at 286 (holding that commercial real estate broker could not establish that an implied contract to pay brokerage commission existed because buyer "not only withheld his assent to the terms of the offer, declining to sign [letter specifying brokerage commission], but also expressed some reluctance about agreeing to pay the full commission on closing.").[5]  Moreover, if the Tubbs can establish an implied contract, the resulting agreement will include an implied duty of good faith and fair dealing—the breach of which would need to be evaluated.  *See Wilson*, 773 A.2d at 1126.

Lastly, we note that the District Court erred by failing to provide an express reason for granting summary judgment on the Tubbs' unjust enrichment claim.  *See Vadino v. A. Valey Engineers*, 903 F.2d 253, 258 (3d Cir. 1990) ("[I]n many cases, such as the one before us, various reasons were assigned by the movant as supporting summary

---

[5]  However, as noted above, if a trier of fact determines that there was an implied contract, it may be difficult for the Tubbs to prove a breach.  Under New Jersey law, "when an offeree accepts an offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms." *Weichert Co. Realtors v. Ryan*, 608 A.2d at 285.

13

judgment, and the district court's failure to explain its position leaves us without a reasoned basis on which to found our review."). The District Court will have an opportunity to explain its reasoning on remand. *See id.* at 259 ("We will exercise our supervisory power to require the district courts in this circuit to accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order.").

Accordingly, we will reverse the grant of summary judgment as to the contract, and quasi-contract, claims.

**D.**

Lastly, the Tubbs contend that the District Court's denial of leave to file a second amended complaint should be overturned so that the Tubbs can assert new claims against the Title Agency's corporate affiliates. *See* Brief of Appellants at 62-68. Rule 15(a) of the Federal Rules of Civil Procedure provides that, after a complaint is amended once, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." As noted above, we review the denial of leave to amend for an abuse of discretion. *See supra* p. 6. A "district court has discretion to deny the request only if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party." *Bjorgung v. Whitetail Resort, L.P.*, 550 F.3d 263, 266 (3d Cir. 2008). Here, the District Court denied leave to amend because, *inter alia*, it concluded that the Tubbs unduly delayed by waiting three years to amend their complaint. We find no abuse of discretion

14

pertaining to that determination.  That conclusion can hardly be called an abuse of discretion.  Rather, given the delay, the decision was eminently reasonable.

## IV.

Accordingly, we will affirm the grant of summary judgment to the Title Agency on the RESPA claim, as well as the denial of leave to file a second amended complaint. We will reverse on the remaining claims asserted against the Title Agency, and remand for further proceedings consistent with this opinion.